[Civ. No. 6217. Second Appellate District, Division One.—August 2, 1929.]

W. S. CHANDLER et al., Respondents, v. GEORGE BOWMAN, Appellant. (And Consolidated Cases.)

L. G. Shelton for Appellant.

McGee, Sumner & Tilden and William A. Sumner for Respondents.

HOLLZER, J., *pro tem.*—Defendant Bowman appeals from a judgment rendered in a certain action in favor of W. S. Chandler and S. K. Mansfield for the sum of $4,500. Likewise defendant Bowman appeals from a judgment rendered in another action in favor of J. A. W. Meiling for the sum of $1500. The first of these suits will be hereafter referred to as the Chandler case, and the second as the Meiling case.

These two actions, pursuant to stipulation of the parties, were tried as companion cases with two other actions, under an arrangement whereby the evidence, objections and rulings in one, so far as applicable, should be received and apply to each of the other suits.

In the Chandler case the complaint alleged that, at all times therein mentioned, Bowman was a part owner in fee in the real property involved herein, and the owner of certain oil and gas rights in said property; that on December 5, 1922, he executed a lease to a certain company, hereinafter referred to as the oil company; that said lease conveyed to the oil company the right to drill for and produce oil and gas from said property, and further provided that the oil company should be reimbursed for the cost of drilling and placing on production of a well or wells for oil on said land, before any oil, *et cetera,* should be payable to the lessors, or those claiming under them. The lease, it was further alleged, was registered with the registrar of titles about December 18, 1922.

The complaint further charged that subsequently the defendant executed and delivered three certain deeds, a copy of each of which was set forth *in haec verba.* One of said instruments purported to convey to the plaintiffs one per cent, another purported to convey to Chandler

one per cent, and the third purported to convey to Mansfield one per cent "of all of the oil and gas produced from said property." Each of said deeds also recited that said one per cent "is a portion of all of the oil and gas produced from the above property, as reserved in deed from George Bowman to Philip A. Grohs," et al.

The answer contained no denial of any of these allegations. The defendant, however, in his answer, in addition to denying that the transaction whereby the plaintiffs acquired these deeds was a joint purchase, pleaded, by way of an affirmative defense, that. he had deposited with the First National Bank of Whittier, as security for a certain note in the sum of $600, three deeds of conveyances to one per cent each of the oil and gas from said property, "with instructions to deliver the same to Philip A. Grohs, who might sell one per cent for sufficient to pay said sum of $600, and that this defendant instructed the said Philip A. Grohs that if he could sell the remainder at the price of two thousand dollars ($2,000) a per cent, or more, to do so, and deliver to the purchasers a deed."

The answer further charged that the plaintiffs had knowledge of said lease prior to the purchase of their respective interests, also that the defendant had withdrawn said royalty from the market, and that the plaintiffs had knowledge of such withdrawal before they purchased.

In addition, the answer alleged that about December 5, 1922, the oil company had entered into a lease with the owners of said property and that defendant had signed the same, but that the oil company had abandoned said lease and subsequently had entered upon the property under a modified agreement without his consent and had drilled a well thereon. The defendant further alleged that the lease signed by him was of no effect and that the oil company had no right to retain any part of the oil attempted to be conveyed by him to the plaintiffs.

In the Meiling case the complaint alleged that Bowman was the owner of certain oil royalties and oil and mineral rights in the property involved herein. In all other respects the allegations·in the respective complaints in the two actions were substantially alike and substantially similar admissions were made by the pleadings.

It is not disputed that the various deeds whereby plaintiffs acquired their respective interests were delivered to them in March, 1923; that they paid to Grohs, the purchase price, which he had fixed for the same; that in August, 1923, the oil company brought in a producing well at a cost of not less than one hundred fifty thousand dollars, and that the oil company refused to account to the plaintiffs for their full percentage of the oil as fixed in their deeds, but instead deducted the sum of $1500 against each one per cent interest in the oil.

█ The first point raised by appellant is that the above-mentioned lease granted to the oil company had been abandoned and was not in force at the time the plaintiffs acquired their respective interests. In this connection it is argued that said oil lease was modified by a certain instrument, claimed to have been executed under date of February 9, 1923, and that the oil company was operating under the later agreement. Although a document, purporting to change some of the terms of that lease, was filed for identification, it was not introduced in evidence. On the contrary, so far as the record discloses, this instrument was never executed by the oil company, nor even by all of the lessors. While there was evidence indicating that the oil company had not commenced drilling a well within thirty days after the execution of the lease, that delay was readily explained by the fact that the lease had not been signed by all of the owners of interests in the oil, and that the lessors had promised to furnish to the oil company, before the expiration of said thirty-day period, written evidence of the approval of said lease by all of such owners as had not signed said lease, but that they had failed to comply with this part of their agreement. On the other hand, the oil company insisted that its rights under said lease had never been modified, and it was engaged in drilling a well on the property in question at the time the plaintiffs acquired their respective interests therein.

Appellant's contention, therefore, that the lease granted to the oil company was not in force at the time the sales in question were made to the plaintiff, cannot be sustained.

█ It is next urged that the deeds obtained by the plaintiffs conveyed no interest in realty, but were merely

transfers of personalty and included no warranties as to the title of the interests thereby transferred.

Appellant concedes that if these instruments can be construed as transfers of interests in oil in the ground, then they constituted conveyances of interests in realty and, hence, became subject to the implied warranties specified in section 1113 of the Civil Code, to the effect that the grantor has not previously conveyed any interest in the same estate to any other person, and that the estate conveyed is free from any encumbrance suffered by the grantor or any person claiming under him.

In the present cases, however, it is contended that the language employed in the instruments delivered to the plaintiffs was not sufficient to make them conveyances of interests in oil in place, but only purported to give to them interests in such oil as might thereafter be taken from the ground.

The answer to this question, therefore, depends upon the construction to be given to said deeds. Omitting such portions as are not material to the point under consideration, each of these instruments recited: "George Bowman, a single man, the registered owner, . . . does hereby grant to . . . all the real property . . . described as follows, to-wit: One (1) per cent of all of the oil and gas produced from lots . . . , being a portion of all of the oil and gas produced from the above property, as reserved in deed from George Bowman to Philip A. Grohs . . . , to have and to hold to the said grantees . . . "

The above referred to deed from Bowman to Grohs et al., contained in addition to the provisions usually found in a conveyance of real property a clause reading: "The grantor reserves one-eighth of all oil and gas produced on the above described property."

The evidence showed without contradiction that in January, 1923, Bowman deposited with the First National Bank of Whittier the four deeds, which were subsequently delivered to the plaintiffs, and also a number of other deeds, the name of the grantee, however, being omitted in each instance. All of these instruments were similar in form, except that some of them, other than the deeds obtained by the plaintiffs, contained a recital: "Subject to matters of record." The record further discloses that the lease

granted to the oil company was executed by Bowman, Grohs and various others, as joint lessors. No distinction was made in that lease between the interest of Bowman and that of any other lessor, except as to the amount of such interest. Thus it appears that Bowman held himself out as the owner of an undivided interest in the mineral rights in said property, or, in other words, the owner of an interest in the realty. It is not disputed that he undertook to convey undivided portions of the same interest to the plaintiffs. Having himself placed that construction upon his own rights in the property, he must expect to be bound thereby. Accordingly, we hold that under the deeds delivered to the plaintiffs, Bowman undertook to convey to them undivided interests in real property. He therefore became liable to them for any loss sustained by reason of any encumbrances suffered by him to be made against said property.

It is next argued that plaintiffs' knowledge of the condition of the title at the time of the purchase was superior to that of Bowman, and hence that the latter would not be liable for warranty of title. There are two answers to this contention. In the first place, the conveyances delivered to the plaintiffs, as already pointed out, constituted grants of interests in realty, and thereby carried with them the warranties of title defined by section 1113 of the Civil Code. The plaintiffs as the grantees were entitled to demand that Bowman deliver to them the kind of title called for by the deeds, and for any failure on his part in that respect, he became liable to them in damages for the loss suffered thereby.

In addition, the evidence disclosed that Bowman's agent, Grohs, represented to Mansfield that the property he was selling was a part of Bowman's land owner's interest in the oil and that it was free and clear. While Grohs also informed Mansfield that the latter could examine the records to verify this representation, and at that time stated he would refund the purchase price if such representation should turn out to be false, and although Mansfield did make an effort to ascertain from the recorder's office the condition of the title, he reported to Grohs that he had been unable to get the necessary information from

the recorder. Mansfield further suggested that the transaction be handled through an escrow extending over a period of from thirty to sixty days. To this, however, Grohs replied that he could not wait that long, especially as there were others anxious to buy these interests. Mansfield explained to Grohs that he was a unit-holder in an oil lease, the royalties in which were encumbered because the cost of the wells was first deducted, and that he wanted to be sure that this did not exist in the Bowman deal. On the promise of Grohs to refund the amount paid, if it should develop that Bowman's interest was not as represented, Mansfield paid the purchase price and accepted the deeds for Chandler and himself. Meiling testified that he had had only one conversation with Grohs, and that the latter informed him that he had some land owner's royalty for sale. Grohs exhibited to him a grant deed, similar to the one ultimately delivered to him, and, after making inquiry at the First National Bank of Whittier as to Grohs' authority to act for Bowman, and upon being informed that he had such authority, Meiling paid the purchase price to Grohs.

From the foregoing evidence it is clear that Bowman's agent deliberately misrepresented the condition of the title to the plaintiffs, and that because thereof they were induced to purchase the respective interests obtained by them. That the principal is liable for such misrepresentation is clear.

Appellant further urges that the plaintiffs became estopped to assert any claim against Bowman because they entered into an agreement with the oil company, whereby they acknowledged the oil company's right to deduct the sum of $1500 against each one per cent interest in the oil. By the terms of that agreement the parties thereto confirmed and ratified the lease made to the oil company on December 5, 1922, and stipulated that, upon the plaintiffs receiving the payments provided for therein, such payments were to be deemed payments in full for all claims and obligations arising out of the production of oil and the operation of the oil company on the leased premises. The moneys paid to the plaintiffs, referred to in said agreement, represented the full value of plaintiffs' percentage of the oil produced up to the date involved, less their

*pro rata* of the cost of the well, said *pro rata* being calculated on the basis of $1500 of each one per cent interest in the oil.

It will be readily seen that by this agreement the plaintiffs did nothing more than admit that they had no claim against the oil company because the latter, as it was entitled to do under said lease, had deducted the cost of the well before accounting for the oil to those who had purchased interests therein. In executing that agreement, the plaintiffs did not surrender anything which either belonged to themselves or to Bowman. Whatever rights the latter had were neither prejudiced nor affected thereby. The agreement did nothing more than acknowledge the existence of the very conditions, which Bowman created, and upon which plaintiffs have asserted the right to maintain the present suits, and by reason of which they recovered their respective judgments herein.

■ Appellant also claims that the plaintiffs became estopped to claim a breach of warranty by reason of their alleged laches. The argument is that, inasmuch as the plaintiffs did not rescind the transaction immediately upon discovering the defect in the title—in other words, because they did not offer to accept a return of the purchase price —they thereby forfeited all right to relief. It is elementary that a purchaser, on discovering a breach of warranty, is not compelled to accept a rescission, but may sue in damages for the loss he has sustained.

■ The appellant's contention that Grohs had no authority to bind Bowman, as principal, requires but little consideration. The evidence disclosed that at the time the deeds were deposited with the bank, Bowman gave to the latter instructions, which in part recited: "The above deeds are executed by me in blank and you are authorized to fill in the name of the grantees upon the order of Philip A. Grohs. It is understood that no money is to pass—through this escrow, as the money will be handled outside of the escrow by Philip A. Grohs, I hereby authorize and appoint Philip A. Grohs, my agent, with full power and authority to instruct you to fill in the names of the grantees in the deeds, which I herewith hand you."

In view of the foregoing instructions and in the light of the admissions contained in the answer with respect to

Grohs' authority, it is obvious that there is no merit to this contention.

The last point advanced by appellant is to the effect that his demurrer on the ground of misjoinder of parties should have been sustained to the second amended complaint in the case of *Chandler and Mansfield* v. *Bowman*, and which, in the lower court, was designated as No. 156714. Our examination of the record discloses that this action was tried upon the original complaint and answer thereto, and that no demurrer on the ground of misjoinder of parties was interposed in that case. While it appears that a demurrer on the ground of misjoinder of parties was pleaded to the second amended complaint in the case of *Chandler and Mansfield* v. *Bowman*, designated in the lower court as action No. 136985, nevertheless, according to appellant, no judgment was filed in that action, and this court is not asked to review any of the rulings therein.

For the reasons herein set forth the judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 20, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 30, 1929, and the following opinion then rendered thereon:

THE COURT.— The petition for hearing, after decision by the District Court of Appeal, Second Appellate District, Division One, is denied, upon the ground that the evidence and findings regarding misrepresentations made by the agents of defendant to plaintiffs are sufficient to support the judgments rendered.