[Civ. No. 16289.   Second Dist., Div. Three.   Nov. 18, 1948.]

WAYNE B. WILLIAMSON, SR., et al., Appellants, v. ARTHUR M. CLAPPER et al., Respondents.

Glenn R. Watson for Appellants.

Joseph L. Altagen and Arthur Mohr for Respondents.

SHINN, P. J.—Plaintiffs, husband and wife, brought this action against defendants, husband and wife, for damages alleged to have been suffered by reason of alleged false representations as to the condition of title to certain real property sold to plaintiffs. Judgment was for defendants and plaintiffs appeal.

The material and relevant allegations of the complaint are the following: that defendants owned a parcel of land in the county of Los Angeles; that defendants held title subject to certain tract restrictions and reservations running in favor of a previous grantor and other owners in the tract, under which the land could not be used for a trailer park, violation of which restrictions would cause title to revert to said grantor; that defendants listed their property for sale with S. G. Holmes, Edward Everett and Jesse D. Walter, authorizing them to act as the agents of defendants in negotiating and effecting a sale of the property for $12,000; that plaintiffs were seeking a site for a trailer court; that they contacted the agents and "said defendants falsely and fraudulently represented to the plaintiffs, both in person and through said agents of defendants, as follows: that said premises were suitable for the installation and operation of a trailer court thereon; that there were no restrictions of record against the use of said premises as a trailer court site"; that defendants and their agents well knew that plaintiffs' sole purpose was to acquire land for use as a trailer court; that defendants and their agents made said representations for the purpose

of inducing plaintiffs to purchase the land; that plaintiffs did rely upon said representations, agreed to make the purchase, moved onto the premises, expended $1,257.01 in improvements to prepare the premises for use as a trailer court; in addition thereto expended work and labor to the value of $300; all with the knowledge of defendants and defendants' agents; and that thereafter plaintiffs first learned, through notice from various property owners in the tract, that the land was restricted against use thereof as a trailer court, whereupon plaintiffs ceased to make further improvements. It was alleged that plaintiffs paid defendants through escrow $6,000 in cash and gave their promissory note for $6,000, secured by a trust deed on the property, and that they paid the further sum of $42.06 as their portion of the escrow and title charges. It was alleged that the improvements made and labor expended on the premises were of no value if the property could not be used as a trailer court; that the reasonable value of the premises at the time of purchase was $10,500; that if the title had been as represented by defendant it probably would have been worth $15,000; and that plaintiffs had been damaged in the sum of $6,057.01, for which they prayed judgment, together with the sum of $500 as exemplary damages.

The verified answer of defendants admitted that plaintiffs and defendants were residents of the county of Los Angeles, State of California, and then, in complete disregard of the facts, denied all the other allegations of the complaint, which, of course, was a denial that they had ever listed the property for sale with the agents, that they had sold it to the plaintiffs or that the title was encumbered by a restriction against the use of the premises as a trailer court, and also that plaintiffs had ever entered into possession of the premises or improved the same. We may observe that there appears to be a growing tendency in the drafting of answers to deny generally the allegations of the complaint without distinguishing between those allegations which are unquestionably true and those which it is desired in good faith to put in issue. No significance is attached to the oath of the verification. This practice is not sanctioned by law and is inexcusable. It renders it difficult, if not impossible, for the trial court to learn from the pleadings what facts are really in issue. It renders it necessary for the plaintiff to prove each material fact alleged or to gain an admission of its truth during the trial. It also complicates the matter of preparation of findings, which are required to cover all the material issues, and renders it difficult

for a reviewing court to determine from an examination of the pleadings and the findings whether the latter are sufficient. The amendment of section 437, Code of Civil Procedure (Stats. 1927, p. 529, Stats. 1933, p. 1848), so as to permit verified denials to be made by reference to specific paragraphs of the complaint did not dispense with the requirement of truth in sworn statements or permit a denial of the allegations of entire paragraphs, all or some of the material allegations of which are known by the defendant to be true. Irrespective of any question of willfully false swearing, the loose practice of pleading which results in the incorporation in the answer of known false denials is to be condemned.

Notwithstanding the state of the pleadings as we have described them, the material issues in the case were the following: (1) did defendants or either of them personally represent to plaintiffs that the property was not restricted against use as a trailer court, knowing that it was so restricted; (2) did defendants or either of them positively assert, in a manner not warranted by the information that they had, that it was not so restricted; (3) did the agent or agents of defendants make such representation knowing it to be untrue, or such positive assertion in a manner not warranted by the information which he or they possessed; (4) if any such representation or assertion was made by an agent of defendants, was it within his actual or ostensible authority; (5) if any of the foregoing questions are answered in the affirmative, was such representation made for the purpose of inducing plaintiffs to enter into the contract; (6) were plaintiffs thereby induced; and (7) were plaintiffs damaged.

Plaintiff, Wayne Williamson, testified that he was positively assured by defendant Arthur M. Clapper that the property was in an M-3 zone, where a trailer court would be permitted, that he was thoroughly familiar with the title in the neighborhood, and that the property was not restricted against use as a trailer court. He also testified that in the presence of said defendant he took measurements of the property and improvements and that he discussed in detail with Arthur M. Clapper the purpose for which he was acquiring the property and the changes in improvements he was planning to make in preparation for using it as a trailer court. He testified that he had similar conversations with the agents, inquired specifically as to whether there was zoning or restriction against the contemplated use; that after plaintiff had looked at the Clapper property with Jesse D. Walter, a salesman for the agent, he

asked Walter to see the Clappers to make sure that there was no zoning or restriction which would interfere with the maintenance of a trailer court; that Walter left and when he returned stated to Williamson that he had talked to both defendants, that they said there were no such restrictions or zoning, and that thereupon he, Williamson, made a deposit on the property and signed a purchase agreement. The receipt that was given read that it was "subject to plans," and this was described by one of the witnesses to mean that the purchase was subject to Mrs. Williamson's approval. There was further testimony by Williamson that he was interested in learning the number of trailers he could put on the property, and that the purchase was understood to be subject to his being able to get a permit from the department of immigration and housing. Shortly thereafter, a permit was obtained and the escrow was opened. Williamson, with the consent of Clapper, went upon the property and commenced his alterations.

Mr. Everett, one of the agents, testified that in his presence his associate, Mr. Walter, at the request of Williamson, left to see Mr. and Mrs. Clapper and upon his return stated to Williamson that they had assured him that the property was not zoned or restricted against use as a trailer court. After being notified by the neighbors that the property was restricted, Williamson went to the agents and explained the situation. Everett testified that he then had a telephone conversation with Arthur Clapper, stating that he had understood that Clapper had assured Williamson that the property could be used for a trailer court, and that Clapper replied, "well maybe I did." Walter testified that he accompanied Williamson to the property when it was first inspected by the latter, that they talked with Arthur M. Clapper, that Williamson inquired of Clapper whether there were any restrictions against using the property as a trailer court, and that Clapper said there were none and that it could be used for that purpose. He also testified, as did Williamson and Everett, to the occasion when he was asked to return to the Clappers to make sure of their statement that the property was not restricted; that he did return to them, talked with Arthur Clapper, was told by Clapper that there were no restrictions, that he returned to his office and reported to Williamson what Clapper had said.

Defendant Mary Janie Clapper testified she was present when Williamson first inspected the property in company

with Walters and that she had no conversation with them with respect to the zoning of the property and that she did not recall that anything was said about restrictions; that Williamson did not at that time mention zoning restrictions or that it was Williamson's intention to use the property for a trailer court; that she did not talk with Walter the second time he came to the house. She testified that she did not know whether the property was restricted. Arthur Clapper testified that he had no idea in what zone the property was located, that neither Williamson nor Walter said anything to him with respect to zoning or restrictions; that it was nearly two weeks after Williamson made his deposit when he, Clapper, learned that Williamson was buying the property for a trailer court, and that he had applied for a permit; that Williamson went into possession at about the time he placed his money in escrow, that Walters came to him at about the time Williamson made his deposit but did not at that time ask anything about restrictions. He also denied having admitted to Everett that he might have told Williamson that the property was unrestricted, and testified that he did not know when he bought the property in 1935, or at any time thereafter, whether the property was restricted.

It was proved that Mrs. Clapper, with the knowledge and consent of her husband, had signed a listing of the property with the agent, "Holmes for Homes," with which agency Everett and Walter were associated, which stated a description of the property, the price, terms and conditions of sale, that the agent was given the right to sell the property, to receive a deposit if an offer should be made on the stated terms, and that the agent would be paid a commission of 5 per cent in case a buyer should be found. This writing was sufficient to authorize the agent to act for defendants in negotiating a sale and to render defendants responsible for any misrepresentations made by the agent as to the condition of defendants' title. (*Chandler* v. *Bowman*, 100 Cal.App. 221, 228 [279 P. 1041]; *Rutherford* v. *Rideout Bank*, 11 Cal. 2d 479, 483-4 [80 P.2d 978, 117 A.L.R. 383]; *Brown* v. *Oxtoby*, 45 Cal.App.2d 702, 708 [114 P.2d 622]; Rest., Agency, § 261.) Furthermore, where a seller of property has knowledge that his agent has made false representations to the buyer with respect to the subject of the sale he may not retain the price paid and escape responsibility upon the ground that the representation of the agent was unauthorized by him. (*Stumpf* v. *Lawrence*, 4 Cal.App.2d 373, 377 [40

P.2d 920]; *Lewis* v. *McClure*, 127 Cal.App. 439, 449-50 [16 P.2d 166]; *Benner* v. *Hooper*, 112 Cal.App. 53, 63-4 [296 P. 660]; *Hamilton* v. *French*, 78 Cal.App. 289, 291 [248 P. 281].) The evidence was sufficient to have warranted a finding that Arthur Clapper made the alleged false representations, and it was also sufficient to prove that the same representations were made by the agent Walter.

The court made only two findings on the subject of the alleged representations as to the restrictions, which findings read: "That it is not true that the defendants herein, both in person and through said real estate concern, falsely and fraudulently represented to plaintiffs that the premises described in Paragraph III of plaintiffs' first amended complaint were suitable for the installation of a trailer court or made any representation as to restrictions on said property. . . . That it is not true that the defendants herein had any knowledge of the plaintiffs' purpose in purchasing said property and made any representation inducing said plaintiffs to purchase the property referred to herein." Three witnesses testified, without contradiction, to the statement made by Walter upon his return from talking with defendants. If the statement of Walter was true, the representations would be deemed those of Clapper. If the statement was untrue it would have been the representation of Walter, as agent for defendants. Although plaintiffs alleged that the representations were made by defendants, both personally and through their agents, it was necessary to prove only that they were made either by defendants or their agent. The first finding could mean that defendants did not make the representations in person but that they were made by the agent without authority to make them. There was no finding as to the terms of the employment of the agents nor as to their authority, actual or ostensible, to make representations which would be binding on the principals.

The second quoted finding is likewise insufficient. The use of the conjunctive, "and," raises an implication that at least one portion of the finding is true, but without specifying which one. It could mean that the representations were made by defendants but without knowledge as to the use which plaintiffs intended to make of the property. It is apparent that both of the quoted findings are in the nature of negatives pregnant, implying the truth of affirmative allegations in the complaint. The authorities have repeatedly condemned such findings as inadequate and uncertain, and as insufficient to

support a judgment. (*Mardesich* v. *C. J. Hendry Co.*, 51 Cal. App.2d 567, 575 [125 P.2d 595]; *Austin* v. *Harry E. Jones, Inc.*, 30 Cal.App.2d 362 [86 P.2d 379].)

The court found further that "it is not true that any damage was suffered by the plaintiffs through any false or fraudulent representation by the defendants herein." There was no finding, however, that plaintiffs had not in fact suffered damage. There was some evidence that the property for which they paid $12,000 was worth at the time only $10,500, but there was no finding as to its value. In addition, the uncontradicted evidence disclosed that plaintiffs had expended a sum in excess of $1,200 in making improvements and alterations on the property prior to learning of the building restrictions. Wayne Williamson testified that only about $200 worth of material was salvaged and that the alterations and improvements were of no value if the property was not used as a trailer court. There was no evidence to the contrary. The quoted finding, which was the only one made on the issue of damage, might mean either that there was fraud without damage, or damage without fraud. The former interpretation finds no support in the record, and is directly contrary to the uncontradicted evidence of special damages to which we have referred; whereas, on the other hand, the latter interpretation is clearly inconsistent with the implication contained in the two findings previously quoted. Furthermore, all three of the findings are to the effect that both defendants did not make the representations. This is not a finding that neither of the defendants made them. The evidence was that Arthur Clapper did make them; and there is no finding that he did not. The familiar rule that findings are to be construed liberally so as to support the judgment cannot be expanded to the point of rewriting them. We would not be justified in reading these findings as if they found that neither of the defendants nor any agent of theirs made the questioned representations.

The evidence discloses that plaintiffs completed their purchase after they had learned that the property was restricted. Defendants contend on the appeal that this constituted a waiver of the claimed fraud. Their claim of waiver is not available to them. The complaint did not allege that the purchase was completed after plaintiffs acquired knowledge of the restrictions, and it was therefore incumbent on defendants to allege that fact if they intended to rely upon it. Where the facts constituting an alleged waiver are not

otherwise shown they must be pleaded if the party relying upon a waiver has an opportunity to plead them. (*Wienke* v. *Smith,* 179 Cal. 220 [176 P. 42]; *Wood* v. *Jotham Bixby Co.,* 29 Cal.App.2d 294 [84 P.2d 204].) This defendants did not do.

■ Furthermore, plaintiffs were acting under the advice of their attorney. They had paid a part of the purchase price and had entered upon the land and made a substantial expenditure of money for labor and materials in alterations and additions. They understood that they had a right to elect whether to rescind the agreement upon the ground of fraud or to complete their purchase and sue for damages. There can be no dispute as to the correctness of this conception of plaintiffs' legal rights. (*Baker* v. *Carstenbrook,* 78 Cal.App. 133, 136 [248 P. 295]; *Hickman* v. *Johnson,* 36 Cal.App. 342, 348 [178 P. 145]; 25 Cal.Jur. 560. See, also, 24 Am.Jur. § 213, p. 40.) "Nor is it true that by an affirmance of the contract the vendee affirms the fraud. Such a declaration it will be impossible to find in any well considered case. The true principle is well stated in *Whitney* v. *Allaire,* 1 N. Y. 305, as follows: 'It is true that if a party affirms a contract with knowledge of the fraud he affirms it wholly, and this, whether it is executory or partially executed. But in neither case does he affirm it as a contract made in good faith. He consents to be bound by the provisions of the agreement, but does not thereby release or waive his claim for damages arising from a fraud collateral to the agreement.' " (*Hines* v. *Brode,* 168 Cal. 507, 512 [143 P. 729].)

The judgment is reversed.

Wood, J., and Vallée, J., concurred.