[Sac. No. 7843. In Bank. June 18, 1969.]

JOSEPH E. BURKE et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; FIDELITY & DEPOSIT COMPANY OF MARYLAND, Real Party in Interest.

Roy A. Sharff and Ronald D. Rattner for Petitioners.

No appearance for Respondent.

Rust, Hoffman & Mills and Michael C. Gessford for Real Party in Interest.

PETERS, J.—Petitioners seek a writ of mandate to compel respondent superior court to set aside its orders of July 25, and November 25, 1968, respectively sustaining objections to petitioners' requests for admissions and denying petitioners' motion for further responses to written interrogatories.[1] This

---

[1] Petitioners also seek a writ of prohibition to prohibit the respondent court from taking further proceedings in the action below (No. 181923) until petitioners have received proper responses to the requests for admissions and written interrogatories. We granted both an alternative writ of mandate and an alternative writ of prohibition. However, we have concluded that a peremptory writ of mandate alone will provide sufficient relief at this stage in the proceedings. Since discovery ordinarily must be completed prior to any pretrial conference and in any event prior to

is an appropriate case, under the standard established in *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439],[2] in which to review discovery orders by use of the prerogative writs rather than relegating petitioners to review on appeal from the final judgment.

On October 7, 1965, Phil Rauch filed an action against petitioner L. A. Westby for the sum of $95,000 plus interest claimed to be due on a promissory note. Upon the issuance of a bond by defendant and real party in interest Fidelity and Deposit Company of Maryland, Rauch caused a writ of attachment to be issued and levied upon real estate owned by Westby. Trial of the action resulted in judgment in favor of Westby and petitioner Burke, as receiver for some of Westby's affairs.

Petitioners thereupon filed an action for wrongful attachment against the bonding company. To support their claim that expenses incurred in defending the suit on the promissory note is a proper item of damages to be recovered in the wrongful attachment suit, petitioners alleged in their unverified complaint that: "The levy of said attachment . . . was valid and regular on its face and, for that reason, Plaintiffs made no motion nor brought any proceeding to discharge or dissolve said attachment, as such would have been unsuccessful and an idle and futile act; the only method by which said

---

trial (see rule 210(d), Cal. Rules of Court), it is implicit in a writ of mandate which directs the trial court to permit certain discovery that the pretrial conference and trial should not proceed until discovery has been satisfactorily completed or appropriate sanctions have been imposed (Code Civ. Proc., § 2034). Mandate is ordinarily the sufficient and appropriate remedy for an improper denial of discovery (e.g., *Carlson* v. *Superior Court,* 56 Cal.2d 431, 435-436 [15 Cal.Rptr. 132, 364 P.2d 308]; *Flora Crane Service, Inc.* v. *Superior Court,* 234 Cal.App.2d 767, 775 [45 Cal.Rptr. 79]) while prohibition is the remedy ordinarily employed to prevent improper discovery (see e.g., *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 368 [15 Cal.Rptr. 90, 364 P.2d 266]; *Gene Compton's Corp.* v. *Superior Court,* 205 Cal.App.2d 365, 381 [23 Cal.Rptr. 250]; compare *Harabedian* v. *Superior Court,* 195 Cal.App.2d 26, 30 [15 Cal.Rptr. 420, 89 A.L.R.2d 994] [writ of mandate may be used to prevent improper discovery]).

[2]In *Oceanside Union School Dist.,* we stated: "In most . . . cases . . . the parties must be relegated to a review of [an interim discovery order] on appeal from the final judgment. . . . [T]he prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases."

attachment could have been dissolved was to successfully defend said action and win it on its merits.''[3]

. The bonding company filed an unverified one-paragraph answer to petitioners' complaint, denying all allegations of the complaint.[4]

Petitioners allege that they know of no facts supporting

---

[3]Attachment is an ancillary or provisional remedy to aid the collection of a money demand by seizure of property in advance of trial or judgment as security for satisfaction of a judgment for the attaching party. (1 Witkin, Cal. Procedure (1954) p. 888.) The party whose property may be or is attached may prevent or release the attachment by (1) giving adequate security in place of the property (Code Civ. Proc., §§ 540, 554-555), or (2) establishing that the writ of attachment was ''improperly or irregularly issued'' (Code Civ. Proc., §§ 556, 558). Of course a final judgment in favor of the party whose property has been attached also effects a discharge of the attachment. (Code Civ. Proc., § 553.)

''An attachment . . . [is] *properly* issued when issued in a case provided for by section 537 of the Code of Civil Procedure. It is *regularly* issued when the requirements of sections 538 [specifying contents of affidavit which party seeking attachment must file with the court in order to secure a writ of attachment] and 539 [specifying nature of undertaking which party seeking attachment and two or more sufficient sureties must execute in order to secure a writ of attachment] are complied with.'' (*Kohler* v. *Agassiz*, 99 Cal. 9, 13 [33 P. 741], italics added.)

Grounds for a motion to discharge an attachment include (1) the fact that the case is not one in which attachment may properly issue; (2) failure of the complaint, tested by pleading rules, to state any cause of action; (3) defects in the undertaking or affidavit; or (4) issuance of the writ for an amount greater than that stated in the affidavit. Improper levy of the writ—e.g., attaching legally exempt property—may be challenged by a motion to quash or vacate the levy. (See 1 Witkin, *supra*, pp. 926-928.)

In a suit for damages for economic loss sustained as a result of a wrongful attachment, expenses incurred in successfully defending the underlying action on its merits are recoverable only upon allegation and proof that relief from the attachment could only be achieved by such a defense and not by any pretrial motion or proceeding based on one of the grounds just mentioned. (*Reachi* v. *National Auto. & Cas. Ins. Co.*, 37 Cal.2d 808, 811-813 [236 P.2d 151].) This is the import of an allegation, such as found in the complaint in the present case, that the attachment was ''valid and regular on its face.''

[4]Petitioners' necessary allegation that a successful defense of the action on the promissory note was the only way to discharge the attachment is an example of the type of conclusory allegation frequently permitted in California as an exception to the general rule that a complaint must contain only allegations of ultimate facts as opposed to allegations of evidentiary facts or of legal conclusions or arguments. (E.g., *Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 154-156 [157 P.2d 1] [plaintiff may allege negligence in general, i.e., conclusory, terms]; see generally, 2 Witkin, Cal. Procedure (1954) pp. 1139-1140.) Thus, although impermissible conclusory allegations need not be answered and are not put at issue by a general denial (see 2 Witkin, *supra*, at p. 1510), petitioners' allegation required a response, and the bonding company's general denial *technically* put this allegation at issue. (Compare Code Civ. Proc., § 437, with *Williamson* v. *Clapper*, 88 Cal.App.2d 645, 647 [199 P.2d 337].)

the bonding company's denial insofar as it relates to the above-quoted allegation in the complaint that the attachment could not have been set aside. They further allege that they initiated discovery proceedings in order to determine whether this denial was sham or based upon facts unknown to them; they sought to discover the bonding company's "contentions on the issues and the facts allegedly supporting such contentions."

Petitioners first propounded requests for admissions that the levy of the attachment was regular and valid on its face, that there had been no motion or proceeding to dissolve or discharge the attachment, that such a motion or proceeding would have been unsuccessful, idle, and futile, and that a successful defense of the underlying action was the only way the attachment could be dissolved. The bonding company objected to these requests for admissions by stating that they called for legal conclusions, not admissions of fact. The respondent court sustained the objections.

Thereupon petitioners propounded written interrogatories to the bonding company, asking "Do you contend" that the levy of attachment was not valid and regular on its face, or that petitioners could successfully have moved or otherwise proceeded to dissolve the attachment prior to defending the underlying action? The interrogatories requested that if the bonding company did make such contentions it "state. all facts, grounds and evidence which you claim supports your contention[s]." Another interrogatory requested the bonding company to "State all the facts upon which you have based your denial of . . . all . . . the allegations contained in plaintiffs' complaint."

The bonding company replied that the last-mentioned interrogatory was "ambiguous, unclear, and, therefore, objectionable." Its reply to the other interrogatories was that they were "objectionable as calling for a legal opinion and conclusion of defendant. The matter[s] referred to . . . [are] issue[s] in this lawsuit which [are] to be decided by the tryer [sic] at the time of trial." The respondent court sustained bonding company's objections to the interrogatories on the ground that the interrogatories "call for the legal opinion and conclusions of the defendant." It sustained the objection to the general interrogatory on the ground that it was a "shot gun question and in effect seeks to have the defendant divulge its entire theory of defense."

The discovery laws in California are designed to expedite the trial of civil matters by (1) enabling counsel to more

quickly and thoroughly obtain evidence and evidentiary leads, and thus to more quickly and effectively prepare for trial, and (2) enabling counsel to "set at rest" issues that are not genuinely disputed. (*Cembrook* v. *Superior Court,* 56 Cal.2d 423, 429 [15 Cal.Rptr. 127, 364 P.2d 303]; *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 371, 376.)

■ Discovery necessarily serves the function of "testing the pleadings," i.e., enabling a party to determine what his opponent's contentions are and what facts he relies upon to support his contentions. (*Singer* v. *Superior Court,* 54 Cal.2d 318, 323-325 [5 Cal.Rptr. 697, 353 P.2d 305]; *Universal Underwriters Ins. Co.* v. *Superior Court,* 250 Cal.App.2d 722, 728 [58 Cal.Rptr 870].) "[T]o say that 'contentions' are not a proper subject of interrogatories is to subvert the whole theory of the [discovery] rules and to make it more difficult for a party to find out what the case against him is about than it was under the old practice. . . . To the extent that interrogatories are used to clarify the contentions of the parties, they are an adjunct to the pleadings, . . . Liberal use of interrogatories for the purpose of clarifying and narrowing the issues made by the pleadings should be permitted and encouraged by the courts." (4 Moore, Federal Practice (2d ed.) ¶ 33.17, pp. 2311-2312.) Professor Moore's observation, relating to the federal discovery rules from which California's discovery laws are largely derived, is even more pertinent to California practice since, as we have noted, the federal system of pleading, unlike California's, permits a party to clarify his opponent's contentions through devices such as a motion for more definite statement, thus making it less crucial for a party in federal court to obtain information concerning contentions through discovery. (*Singer* v. *Superior Court, supra,* 54 Cal.2d 318, 323.)

■ Accordingly, a defendant in California courts may be required through discovery to disclose not only the evidentiary facts underlying his affirmative defenses (*Singer* v. *Superior Court, supra,* 54 Cal.2d 318, 323-325 [defendant required to disclose the facts underlying his allegations of contributory negligence and assumption of risk]) and denials (*Durst* v. *Superior Court,* 218 Cal.App.2d 460, 464-465 [32 Cal.Rptr. 627] [defendant required to disclose the facts underlying his denial that plaintiff had been injured or disabled]) but also whether or not he makes a particular contention, either as to the facts or as to the possible issues in the case. (*Universal Underwriters Ins. Co.* v. *Superior Court,*

*supra,* 250 Cal.App.2d 722, 728; see also *Sheets* v. *Superior Court,* 257. Cal.App.2d 1, 13 [64 Cal.Rptr. 753].) A plaintiff, of course, is subject to analogous requirements.

■ Similarly, when a party is served with a request for admission concerning a legal question properly raised in the pleadings he cannot object simply by asserting that the request calls for a conclusion of law. He should make the admission if he is able to do so and does not in good faith intend to contest the issue at trial, thereby "setting at rest a triable issue." (*Cembrook* v. *Superior Court, supra,* 56 Cal. 2d 423, 429.) Otherwise he should set forth in detail the reasons why he cannot truthfully admit or deny the request. (*Lieb* v. *Superior Court,* 199· Cal.App.2d 364, 368 [18 Cal. Rptr. 705].)

■ In the present case, petitioners seek to determine whether the bonding company really contends that the attachment was vulnerable to pretrial attack. Although the.right to determine an opponent's contentions through discovery procedures extends to all civil cases, its exercise is particularly important in a case such as this one involving the defendant's use of a type of general denial that has been justly condemned—one which does not distinguish between "those allegations which are unquestionably true and those which it is desired in good faith to put in issue" and which therefore imposes upon both the court and the plaintiffs (*Williamson* v. *Clapper, supra,* 88 Cal.App.2d 645, 647).

An answer which by means of an indiscriminate general denial denies virtually indisputable matters—such as matters of public record—is highly suspect[5] and may leave a plaintiff wondering whether other allegations which he honestly re-

---

[5]The bonding company's general denial technically put in issue allegations in petitioners' complaint such as the following:

"Defendant FIDELITY AND DEPOSIT COMPANY OF MARYLAND . . . is a corporation duly licensed. to become surety on bonds on undertakings required or authorized by California laws.

"On October 7, 1965, one Phil Rauch commenced an action in the above-entitled Court entitled *'Phil Rauch, Plaintiff,* v. *L. A. Westby, Defendant,'* Number 162 325, . . . Thereafter, on or about 22nd day of April, 1966, said Phil Rauch made application to this Court for· a writ of attachment . . . and . . . the Defendant Fidelity made, executed and delivered to said Phil Rauch its written undertaking . . . a copy of which · is attached hereto . . . .

". . . [P]ursuant to said application and undertaking, the Clerk of this Court issued a Writ of Attachment . . . and . . . the Sheriff of the County of Sacramento, acting under the said Writ of Attachment, did levy upon and attach, on the 26th day of April, 1966, certain real property [owned by Westby] . . . .

"Thereafter, commencing on April 17, 1967, said action was brought to trial and, on July 31, 1967, judgment was entered . . . in favor of Defendant L. A. Westby, . . .""

gards as beyond dispute, but which are not inherently indisputable, are really disputed by the defendant.

The interrogatories in question ask, as did the interrogatories approved in *Universal Underwriters Ins. Co. v. Superior Court, supra,* 250 Cal.App.2d 722, 725-726, 728, "Do you contend that ... ?" They seek simple yes or no answers which petitioners are entitled to have.[6] The bonding company's objection that these interrogatories ask for a "legal opinion" is plainly without merit. Its further objection that the interrogatories seek to have it establish the very propositions that petitioners must prove at trial is misguided. First, only if the question of inability to challenge the attachment prior to trial is in good faith contested should petitioners be required to prove it at trial. Second, the fact that one party has, under the rules of evidence, the burden of persuasion on a particular issue does not preclude him from demanding information on that issue from his opponent in discovery proceedings. (E.g., *Durst v. Superior Court, supra,* 218 Cal.App. 2d 460, 464-465.)

Petitioners also seek to determine through interrogatories the "facts, grounds, and evidence" upon which the bonding company relies if it does contend that the attachment could have been discharged by some pretrial motion or procedure. This inquiry is directed at least in large part to the sort of information which is subject to discovery. For example, if the bonding company contends that the action involving Phil Rauch and petitioner Westby was not one in which an attachment could properly issue, or that there were defects in the undertaking or affidavit supporting the writ of attachment, and that for either of these reasons a pretrial motion to discharge the attachment would have been likely of success (see fn. 2, *supra*) it should so state. Or, if despite the fact that most matters relevant to the validity of an attachment are on the face of the various documents relating to the attachment (see *Kohler v. Agassiz, supra,* 99 Cal. 9, 13), the bonding company relies on extraneous facts in contending that the

---

[6]In response to petitioners' interrogatories, the bonding company replied, inter alia, that the issues concerning the vulnerability of the attachment to pretrial attack are "to be decided by the tryer [*sic*] at the time of trial." This appears to fall short of an unambiguous statement that the bonding company actually disputes the allegation that the attachment was not vulnerable to such an attack and intends to contest the issue at trial. This response may amount to nothing more than an admission of the obvious fact that the question whether a pretrial challenge of the attachment would have been successful is properly in issue under the pleadings in the case.

attachment could have been challenged successfully *prior to trial*, it should divulge these facts.

Such information is not protected from disclosure under the holding in *Flora Crane Service, Inc.* v. *Superior Court, supra*, 234 Cal.App.2d 767, 780-782. In that case the defendants alleged as affirmative defenses (1) that the complaint failed to state a cause of action, (2) that there was a defect and misjoinder of parties defendant, and (3) that the complaint was ambiguous, unintelligible and uncertain. The plaintiff served the defendants with interrogatories asking them to *explain how* the complaint failed to state a cause of action and *how* there was a defect and misjoinder of parties, *and how and in what manner* the complaint was ambiguous, unintelligible and uncertain. The interrogatories also asked the defendants to state *all "contentions"* underlying their affirmative defenses.

The Court of Appeal upheld the trial court's refusal to require answers to these interrogatories, reasoning that the trial court "was warranted in concluding that [several of] the interrogatories in question sought *contentions, conclusions or legal arguments* instead of facts" and that the trial court "may have felt that these defenses [other than failure to state a cause of action] were not properly pleaded . . . and . . . should have been eliminated by a motion to strike." (234 Cal.App.2d at pp. 781-782, italics added.) The Court of Appeal further stated that the interrogatory relating to the defense of failure to state a cause of action both expressly and in substance sought the defendant's "*legal opinion or contention*" and invited the defendant to supply any material fact or facts *not* alleged in the complaint, thereby "shift[ing] to defendants [the plaintiff's] responsibility of pleading an actionable cause." (*Id.* at p. 782.)

The *Flora Crane Service* case stands for the proposition that discovery ordinarily may not be employed either to elicit an opponent's legal reasoning or theories (cf. Code Civ. Proc., § 2016, subd. (b) [attorney's "work product" rule]) or to force him to cure deficiencies in the proponent's pleadings.[7] There is no question of defective pleadings before us in

---

[7] It is clear from the context of the opinion that *Flora Crane Service*, in condemning the attempted use of interrogatories to ascertain an opponent's "contentions," does not refer to ascertaining *what* an opponent contends, a use of interrogatories advocated by Professor Moore and later sustained in *Universal Underwriters Ins. Co.* v. *Superior Court, supra*, 250 Cal.App.2d 722, 728. Rather, *Flora Crane Service* condemns only attempts to ascertain "contentions" in the sense of legal reasoning or theories.

the present proceeding. It is possible that the interrogatories could be construed as requesting, inter alia, the bonding company's legal reasoning or theories. Therefore the trial court would be warranted in ruling that *insofar as they do* they need not be answered. However, insofar as the interrogatories seek to ascertain the specific basis or bases, if any, for a contention that the attachment was vulnerable to pretrial attack, the trial court cannot refuse to compel answers on the basis that the interrogatories call for "legal opinion[s]." For example, the bonding company may be required to divulge whether it contends that there is a defect in the undertaking or affidavit supporting the writ of attachment, although it need not divulge the legal theory or reasoning process underlying a contention that there is such a defect.

 The interrogatory demanding that the bonding company state "all the facts upon which you have based your denial of . . . all . . . the allegations contained in plaintiffs' complaint" is obviously wide-ranging. However, interrogatories are designed to permit discovery of all facts "presently known to a defendant upon which it predicates its defenses" (*Durst* v. *Superior Court, supra,* 218 Cal.App.2d 460, 464-465), and no reason appears why such an interrogatory should not be permitted under this principle where, as here, the answer consists solely of a disfavored overbroad general denial which gives the plaintiff no guidance whatsoever regarding what specific matters legitimately are at issue and warrant discovery. The bonding company's objection that the interrogatory is "ambiguous" and "unclear," is without merit, and the respondent court in sustaining the objection on a different ground apparently recognized this. However, the court's basis for sustaining the objection, that it was a "shot gun question and in effect seeks to have the defendant divulge its entire theory of defense," is equally unsupportable.

First, the "shotgun" interrogatory condemned in *West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407, 419 [15 Cal.Rptr. 119, 364 P.2d 295], was an interrogatory with many subinterrogatories, the form of which was "such that . . . the reader [must] spend extra unnecessary time and effort in order to ascertain that he has not overlooked the impact of references back to preceding subinterrogatories." This description does not fit the interrogatory in the present case. Second, although it may be a valid ground for objection that

an interrogatory seeks to have a defendant disclose his *theory* of defense, the interrogatory in question does not seek to elicit theories but explicitly requests facts. The interrogatory should be taken at face value. (*Singer* v. *Superior Court, supra,* 54 Cal.2d 318, 326-327.)

Nor does this interrogatory call for all of the facts defendant intends to produce at the trial in support of its defenses. It plainly does not seek to improperly "tie down" the bonding company. (*Singer* v. *Superior Court, supra,* 54 Cal.2d 318, 325.)

Let a peremptory writ of mandate issue (1) requiring respondent court to vacate its orders of July 25 and November 25, 1968, which respectively sustained objections to petitioners' requests for admissions and denied petitioners' motion for further responses to written interrogatories, and (2) directing the court to reconsider the objections and the motion and to make its orders in reference thereto in accordance with the views expressed herein. The alternative writ of prohibition is discharged.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.