[Civ. No. 39383. Second Dist., Div. Two. Feb. 9, 1972.]

CHARLES S. SIGERSETH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CANOGA PARK LUTHERAN CHURCH, Real Party in Interest.

## COUNSEL

Brill, Hunt, De Buys & Burby, William E. Burby, Jr., and John R. Johnson for Petitioner.

No appearance for Respondent.

Michael L. Glickfeld and Long & Levit for Real Party in Interest.

## OPINION

**ROTH, P. J.**—Petition for a writ of mandate or prohibition to the Superior Court of Los Angeles County to vacate its order imposing sanctions on petitioner for his refusal to obtain information from his own expert witnesses, at his own expense, with which to answer interrogatories under Code of Civil Procedure section 2030. We affirm the order.

### FACTS

Real Party in Interest (the Church) filed suit in March 1967 against petitioner, a painting subcontractor, and the general contractor, for fire damage allegedly resulting from their negligence in performing repairs to the church building. The Church claims that the fire was caused by a drop-cloth left by petitioner over three high-intensity flood lamps at the close of a work day, and that the lamps ignited the cloth when turned on. To determine whether this was possible, petitioner contracted with Vollmer Engineering Laboratories (Vollmer) to test the same drop-cloth material with the same type of lamp.

On July 23, 1971, the Church served petitioner written interrogatories under section 2030[1] which included questions as to whether any such expert witness had been hired and had conducted any such tests and if so,

---

[1]All references to code sections are to the Code of Civil Procedure unless otherwise stated.

■■■■■

the nature of the tests. Question 20 then asked for detailed information regarding the specialized knowledge, experience and qualifications of any such expert. In his answers, petitioner named Vollmer the expert he intended to call as a witness and described the basic details of the tests made. Petitioner replied to question 20 (see fn. 4, *infra*) as follows: "Information unknown, other than Mr. Vollmer is a Professional Engineer California No. 14229."

Questions 21, 22 and 25, and petitioner's answers were as follows:

"21. Has any person listed in your answer to the preceding interrogatory arrived at or formed any opinion as to any subject with respect to which he was consulted by you or concerning which he has advised you?"

Answer: "Yes.

"22. If your answer to the preceding interrogatory is in the affirmative, is the opinion of each such person based on facts personally perceived by or personally known to him? a. If so, state specifically and in detail each fact personally perceived by or personally known to him.

Answer: "Objected to as attorney's work and product."

"25. List by author, title and publisher each scientific, technical or professional text, treatise, journal or other .publication which each person listed in your answer to interrogatory No. 20 referred to, considered or relied upon in arriving at or forming his opinion."

Answer: "None that we know of except common sense."

After a hearing on October 5, 1971, the court granted the Church's motion to require petitioner to give further answers to questions 20, 22 and 25 and others not pertinent here. In his supplemental answers petitioner then stated that he had no additional information on the subject of the crucial question 20 here in issue and objected that he should not be required to pay Vollmer for his time in furnishing to him the information necessary to answer.

He further stated that he would have no objection to the Church's obtaining the information by taking Vollmer's deposition. Petitioner gave further answers to Nos. 22 and 25 as follows:

"22. To the best of my knowledge the opinion of Mr. Vollmer is based upon facts personally perceived by him when he performed certain tests using a 300 watt indoor flood lamp and a duck cloth painter's tarp.

"(a) Results of the tests referred to performed by Mr. Vollmer indicate

that the tarp can be caused to smolder within one inch of the illuminating glass surface of the light bulb. The tarp did not burst into flames, but merely smoldered."

"23.[2] Not applicable because of answer to Interrogatory No. 22."

The Church moved for sanctions against petitioner for his refusal to answer 20 adequately, attaching the declaration of its process server who declared he had unsuccessfully tried twice at his office and five times at his residence, all on different dates, to serve a subpoena on Vollmer for a deposition.

One day before the hearing petitioner filed another "Supplemental Answer" to question 20 stating only that Vollmer had refused to furnish him the information required.

After hearing on November 3, 1971, the respondent court found that petitioner had wilfully refused to comply with its order of October 5th.[3] Sanctions were imposed: (a) pay a $350 attorney's fee to the Church; (b)

---

[2]This is clearly a typing error, since only 25 remained to be answered.

[3]The record shows that immediately after the court made its order on October 5, petitioner's counsel addressed a letter to its expert, Mr. Vollmer, substantially as follows, to wit:

"Dear Mr. Vollmer:

"Enclosed is part of a set of Interrogatories that were served on our client referable to your qualifications as an expert. You will recall that you ran some tests at our request on a paint tarp with an electric light bulb February 11, 1971, and I refer you to Laboratory No. 010286. Interrogatory No. 20 subsections b, c and d we objected to on the basis that this information was not given to us in your report and that we were not obligated to get same from you. The plaintiff's attorney tested us out on this objection and the court ordered that we must get the information to answer these three subsections of Interrogatory No. 20.

"I would appreciate it if you would put down the necessary information to answer subsections b, c and d and then return same to our office as soon as possible. We have 20 days in which to comply with the court order.

"Your earliest attention to this request will be appreciated.

"Yours very truly,
"WILLIAM E. BURBY, JR."

At the hearing on November 3d, inspired by petitioner's failure to make any answer to interrogatory 20 (see fn. 4, *infra*) an extended argument took place during the course of which petitioner's counsel stated petitioner's position as follows:

"MR. BURBY: I didn't have any intention when I hired Vollmer of answering interrogatories about his background, so I didn't ask him before he was hired, 'By the way, if we are served three pages of interrogatories asking for all your educational background, engineering degrees, and all that, now if you don't answer those interrogatories we can't hire you.' I didn't discuss that with him, that is true. I will put that on the record. I didn't know anything like that was coming. We only got those interrogatories about the last two months before the case was set for trial."

submit Vollmer for deposition within 10 days, and (c) in effect pay Vollmer for his time at the deposition. In the absence of compliance the use of Vollmer or of any other expert at trial on the same factual issue and "to avoid the last minute change of experts which would also frustrate this discovery" was barred. Trial had been set for November 23.

Petitioner contends, in effect, that the court abused its discretion in making the order because: (1) written interrogatories to a party cannot be used to force him to obtain information from his expert witness at his own expense, and (2) the sanctions imposed were punitive rather than designed to further discovery.

## DISCOVERY

The controversy at bench is centered on petitioner's failure to respond to interrogatory 20.[4]

Interrogatory 20 is limited in scope to the discovery of petitioner's expert qualifications. Significantly, petitioner has answered interrogatories 22 and 25 which were directed at ". . . each fact personally perceived by or personally known . . . by the expert. Having revealed the substance of the expert's findings, petitioner now refuses to make discovery relative to matters which shed light on that expert's status as an (expert) witness.

The discovery laws in California are designed to expedite the trial of civil matters. (*Burke* v. *Superior Court,* 71 Cal.2d 276, 280 [78 Cal.Rptr. 481, 455 P.2d 409].) Liberal use of interrogatories for the pur-

---

[4] "20.* If your answer to any part of the preceding interrogatory was in the affirmative then with respect to each person so consulted or so advising, state specifically and in detail:

"a. His name, address, telephone number, job title, occupation and employer as of the date of his consultation or advice.

"b. The area of his special knowledge.

"c. The full nature of his skill or experience:

"(1) The number of years of such experience.

"(2) The place where and circumstances under which such experience was gained.

"d. The nature and extent of his training or education.

"(1) Where he received his training or education.

"(2) The name and address of each person from whom or institution from which he received his training or education.

"(3) The certificates, degrees, diplomas or other evidence of satisfactory completion of such training or education held by such person as evidence thereof.

"(4) Is such person a member or diplomate of any board, society or other organization in the field of his claimed expertise? If so, please identify each such organization and the character of his membership therein."

*In answer to Interrogatory 13 petitioner advised that Vollmer was to be used as an expert.

pose of clarifying and narrowing issues should be, and is, encouraged by the courts. (*Burke* v. *Superior Court*, p. 281.) The qualifications, or lack thereof, of an expert is clearly an issue which, if resolved favorably to petitioner prior to trial, eliminates incidental issues and promotes a more expeditious trial of the substantive issues.

We agree with the general observation of the Court of Appeal in *Scotsman Mfg. Co.* v. *Superior Court*, 242 Cal.App.2d 527 [51 Cal.Rptr. 511], that ". . . the information and opinions of the expert *relevant to his status as a witness* may be discovered through interrogation and deposition procedures." (Italics added.) (242 Cal.App.2d at p. 532.) Arguments propounded by petitioner that the expert here was not under his "control" (*Volkswagen of America, Inc.* v. *Superior Court*, 18 Cal.App.3d 477 [96 Cal.Rptr. 205]) are inapposite, if only for the pragmatic reason that, unlike *Volkswagen*, petitioner was not required to produce the expert Vollmer, but had affirmed in answer to interrogatory 13 that he intended to use him as an expert and was merely asked by his adversary to supply such information about his expert's qualifications as one might assume every attorney will obtain about an expert who he expects to call and upon whose opinions he proposes to rely and expects the court to accept. Moreover, it appears that the thrust of petitioner's objection below was not that Vollmer was not under his control but that the interrogatory was burdensome in that he would have to get the sought-for information from Vollmer personally. It is noted, too, that petitioner does not unequivocally state that he does not have the information (see fn. 3). Petitioner stubbornly takes the position that he has no duty to impart the information and that the Church must depose Vollmer to get it. Further, it occurs to us that any trial lawyer who calls an expert witness vouches for his competence, and that if petitioner didn't have the information when question 20 was first propounded, he would charge himself with the duty of getting it and verifying that he was in fact going to produce a competent expert.

Vollmer's years of experience, his training and education, cannot, even if he is a diplomate of the country's most select institutions, be so extensive as to require "burdensome" hours to impart the data to petitioner's counsel. However, granted that petitioner was required to make an effort to obtain the data requested, there is no rule which holds that proper discovery is limited to interrogatories which may be answered without effort or loss of time.

We note Federal Rules of Civil Procedure, rule 26(b)(4) (see *Burke* v. *Superior Court, supra*, 71 Cal.2d 276, 281) which makes provision for the discovery of the "substance of the facts and opinions to which the ex-

pert is expected to testify and a summary of the grounds for each opinion." Rule 26(b)(4) is an unequivocal indication, even though not binding on us, of the liberality with which even the subject matter of the expert's expected testimony is made available to the opposing party through discovery procedures. As noted, it appears that at bench that substantive opinion of the expert has already been discovered. It cannot be that the procurement of the expert's qualifications through discovery proceedings is barred while his opinion itself is discoverable through interrogatories.

█ Finally, we have determined that the sanctions imposed by the court were, in light of the foregoing, a proper exercise of its discretion. (Code Civ. Proc., § 2034, subd. (b)(2)(iv).) The order is designed, as it should be, to lend effectiveness to our discovery statutes. We note, too, that rule 26(b)(4) requires the party seeking discovery to pay expert's witness fees only when, in addition to the matters outlined above, the court orders "further discovery" by other means. Petitioner's complaints as to the financial burden, implicit in listing his expert's qualifications, are without merit.

The order is affirmed. The alternative writ is discharged and the peremptory writ is denied. The real party in interest to recover costs.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied March 7, 1972, and on March 9, 1972, the judgment was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied April 6, 1972.