[Civ. No. 944. Fifth Dist., July 16, 1968.]

A. E. RADINSKY, Plaintiff, Cross-defendant and Appellant, v. T. W. THOMAS, INC., et al., Defendants, Cross-complainants, and Respondents.

A. E. Radinsky, in pro. per., and Albert T. Frantz for Plaintiff, Cross-defendant and Appellant.

Cavalero, Dietrich & Bray and Mark S. Bray for Defendants, Cross-complainants and Respondents.

STONE, J.—The trial court found for respondents-lessees in this action to enforce a rescission of lease on the ground of fraud and misrepresentation on the part of appellant-lessor.

In 1958 appellant and Carolyn Latz moved a house owned by appellant upon a vacant lot owned by Mrs. Latz, and converted it to an office building. When remodeled, it did not conform to the building code ordinances of the City of Stockton in numerous respects. The building had been placed within 3 feet of the west property line, yet appellant constructed a 15-foot gravel and oil driveway along the west side, encroaching some 12 feet upon the adjacent property. In brochures prepared by appellant, some of which he gave respondents, the building was represented as having a circular driveway with parking space clear around the building. In late July 1960 when respondents entered into negotiations for a lease of the premises, appellant showed R. W. Thomas, vice-president of the corporation, the building, including the driveway and parking area.

While discussing the suitability of the premises as an office building, Mr. Thomas vaguely recalled having read in a newspaper about appellant having trouble with the city over a building. He asked: "Didn't I read something about you some time ago in the newspapers about some sort of trouble you'd had with the City?" Appellant replied: "Oh, yes, but that had nothing to do with this property, it had to do with the property where the building was on Oak Street. I had some trouble with the city officials, building inspectors." Mr. Thomas asked: "Well, did you have any with this property?" Appellant answered: "Oh, a little bit, you can't move an older building and remodel it without having some small difficulties, but I took care of them all and the building inspector okayed the building, it's all right."

On August 9, 1960, appellant and Mrs. Latz signed, as lessors, a 10-year lease at a rental of $250 per month commencing September 1, 1960, and a $2,000 deposit to cover the last eight months of the term. R. W. Thomas handed Mrs.Latz and appellant each a check for $1,000 to cover the deposit, and took the leases with him for signature by the proper officials of his company as lessee. Thomas testified that later, after signing the lease, he had some reservations because appellant called him daily and sometimes more often, urging that the lease be signed and a copy returned to the lessors, and that respondents enter into possession immediately although the term did not commence until September. His doubts were heightened when he discovered that two things appellant had told him, not otherwise relevant here, were untrue. He wondered if there was some reason for appellant's haste, and mentioned the matter to respondents' attorney. The attorney ordered a preliminary title search, which reflected that back taxes were due and unpaid. Thomas then discussed the leased property with the city authorities, who advised him that it violated the city building code in several respects, and when Thomas applied for a certificate of occupancy, the city refused to issue one. This was on September 13, and on September 26 respondents notified appellant that they were rescinding the lease and demanded return of their $2,000. Appellant rejected the rescission and commenced this action for rent, damages, attorneys' fees and costs.

Respondents answered the complaint, alleging fraud in the inducement, and filed a cross-complaint alleging, first, that the lease was never consummated and, second, that if a valid lease existed respondents had rescinded it upon the ground it was

induced by fraudulent misrepresentations of appellant.

After three days of trial before a jury, a conference between court and counsel was held in chambers. What occurred there has not been made part of the record, but upon return to the courtroom respondents stipulated that a lease had been executed between the parties. They then withdrew what the court and counsel conceived to be a legal defense to appellant's complaint for rent, damages, attorneys' fees and costs, and elected to proceed on their cause of action in equity to have a rescission declared. Apparently agreement had been reached in chambers that the cause of action upon the cross-complaint was equitable, since the court observed that only equitable issues remained and that the jury could be dispensed with. Counsel for appellant requested the court to retain the jury in an advisory capacity, while respondents advised the court there was no need for a jury in view of the issues. The trial judge observed that he would prefer to make his own interpretation of zoning and building ordinances of the City of Stockton, upon which the question of rescission largely rested, and excused the jury.

The case is complicated by legislation enacted after the action was commenced and before it was tried.

At the time the pleadings were settled and a pretrial order filed in 1960, the Civil Code provided two distinct procedures for obtaining rescissory relief: an action in equity pursuant to sections 3406 through 3408 to have the court declare a rescission, or an action pursuant to sections 1688 through 1691 to enforce an out-of-court rescission. A jury trial was not a matter of right under the equitable procedure provided by sections 3406-3408, while either party could request a jury in the action at law under sections 1689-1691. (*Philpott* v. *Superior Court*, 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990]; *McCall* v. *Superior Court*, 1 Cal.2d 527 [36 P.2d 642, 95 A.L.R. 1019]; *Bank of America* v. *Lamb Finance Co.*, 145 Cal.App.2d 702, 706-707 [303 P.2d 86]; *Rescission at Law and in Equity*, 36 Cal.L.Rev. 606.)

The California Law Revision Commission recommended that the Legislature establish "a single rescission procedure in lieu of the existing dual procedures" upon the ground it "would facilitate a resolution of existing confusion as to the availability of jury trial," and that it would also terminate "the advantage—unfair on the face of it—which a rescinding party seems presently to possess in being able to elect at his pleasure whether to proceed by way of an action to enforce a

rescission in which a jury may be had or by way of an action to obtain a rescission which must be tried to the court." (1961 Cal. Law Revision Com. Rep., Rescission of Contracts, p. D-23.) The Legislature, in 1961, followed the recommendation by repealing Civil Code sections 3406-3408, thereby eliminating the procedure for an equitable action to have a rescission declared, and by amending sections 1689 and 1691 and enacting a new section, 1692, to clarify the procedure for bringing an action to have an out-of-court rescission enforced. (See 19 Hastings L. J., *Statutory Changes in the Law of Rescission in California*, p. 1248.)

Although respondents entitled their action "Equitable Rescission and Restitution," and undoubtedly intended to state their cause of action under the then-existing sections 3406-3408, they alleged an out-of-court rescission. Thus their pleading stated a cause of action to enforce a rescission, within the requirements of sections 1689-1692 for rescissory relief at law. Just as in any action at law, a jury may be waived in an action to enforce a rescission pursuant to Civil Code sections 1689-1692, and that is the effect of what was done here.

Since respondents' pleadings meet the requirements of sections 1689-1692, the question narrows to whether the trial court committed reversible error in dismissing the jury in an action at law. (See 3 Witkin, Cal. Procedure (1954) p. 2289.) The record reflects that the case was treated by court and counsel as though sections 3406-3408 had not been repealed; they agreed that the court was under no duty to submit the question of rescission to the jury. It is not clear whether the court and the attorneys were unaware of the change in the law, or whether they believed the law in effect at the time the pretrial issues were settled governed at the trial, but it is clear that both court and counsel agreed a jury would be advisory only and whether the jury was to be retained in this capacity was a matter within the court's discretion. This presents a situation strikingly similar to that in *Greenstone* v. *Claretian Theological Seminary*, 158 Cal.App.2d 493 [322 P.2d 482], where the court held that the parties having agreed the only right to a jury was in an advisory capacity, there was a waiver.

The instant action was thoroughly tried without a jury and, having gone over the record quite carefully, we are convinced that the findings of the trial court are correct and the decision is just. In view of this circumstance, we are strongly

impelled to hold that there was an effective waiver of a right to trial by jury because the case was tried upon the theory the issues were equitable and it was up to the court whether there would be an advisory jury. Hence the court did not err by electing to proceed without a jury.

Appellant attacks the sufficiency of the evidence, but his arguments are based entirely upon the presupposition that his testimony is to be taken at face value and, inferentially, the testimony of respondents is to be ignored. He takes strident exception to the finding that he made fraudulent representations, a finding that is abundantly supported by the evidence. His testimony on this issue, cited in his brief, at best raises a conflict in the evidence. Whether there has been fraud by misrepresentation is a question of fact for determination by the trial court, and conflicts in the evidence must be resolved in support of the findings. (*Cortez* v. *Weymouth,* 235 Cal. App.2d 140, 150 [45 Cal.Rptr. 63] ; *Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, 110-111 [38 Cal.Rptr. 440].)

The issue of reliance is no less a question of fact than the question whether there were misrepresentations of material facts, so the court's resolution of conflicting evidence upon this point is equally as conclusive upon this reviewing court as are the findings that misrepresentations were made by appellant. (*Vogelsang* v. *Wolpert, supra,* 227 Cal.App.2d at p. 109.)

 It is contended that if any misrepresentations induced respondents to enter into the lease, they were immaterial since it is the obligation of the lessors, not the lessee, to provide premises that meet building code standards and all respondents needed to do was demand that appellant bring his building up to the mark. This argument overlooks the fact that at the time the term was to commence respondents were prevented from taking possession because the city building inspector refused to issue a permit for occupancy. A city official testified that had respondents occupied the building, proceedings in abatement could be brought or respondents could be charged with a misdemeanor and ousted from possession. Equally as important is testimony that had the building been altered to meet the city building restrictions its utility as an office building would have been destroyed. For example, the driveway and parking area, one of the principal inducements for leasing the property, encroached 12 of its 15 feet of width upon the adjacent premises owned by the Odd Fellows Hall Association. Another inducement was ample light and air provided by three-section windows in each of the rooms

along the west side. Building restrictions required such windows to be walled up in a building within 3 feet of the property line. In short, if the violations of zoning and building ordinances were remedied, the utility of the building for the purposes for which respondents leased it would be destroyed.

Appellant contends that in any event respondents should not have been afforded relief in equity as they came into court with unclean hands. The gist of the argument is that respondents denied they had entered into a contract with appellant while, in fact, they held signed copies of the lease, which they produced after the trial had started. We find nothing fraudulent, inequitable or misleading in respondents' pleading two causes of action, one that there was no lease because misleading statements of appellant prevented a meeting of the minds and, second, that if there ever was a lease respondents rescinded the agreement prior to the time appellant filed his lawsuit. During the trial respondents elected to stand upon their rescission *"in pais."* Inconsistent defenses may be pleaded (2 Witkin, Cal. Procedure (1954) § 533, p. 1526), so there was nothing deceitful in respondents' method of proceeding. The basis of both causes of action was appellant's fraud and misrepresentation of fact; these acts were specified in the letter of rescission, they were alleged in the pleadings, and they were set forth in the pretrial order. The case was tried upon the theory that respondents charged appellant with fraud and misrepresentation. We find neither "unclean hands" nor estoppel in these circumstances. Moreover, appellant has failed to demonstrate any prejudice resulting from respondents' actions, their pleadings, or their conduct during trial. (*Wiley* v. *Wiley,* 59 Cal.App.2d 840, 842 [139 P.2d 950].)

Appellant raises a number of questions for the first time in his closing brief. It is well settled that an appellant must show good cause for not raising all of his points on appeal in his opening brief. (*People* ex rel. *Department of Public Works* v. *Garden Grove Farms,* 231 Cal.App.2d 666, 670 [42 Cal.Rptr. 118]; 3 Witkin, Cal. Procedure (1954) Appeal § 155, pp. 2341-2342; 4 Cal.Jur.2d, Appeal and Error § 488, p. 324; West's Cal.Dig., Appeal and Error § 762.) Appellant has not shown good cause; nevertheless we have carefully reviewed the scatter-gun assertions made for the first time in the closing brief, and we find no merit in any of them.

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied August 12, 1968, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1968.