[No. B030713. Second Dist., Div. Seven. Mar. 1, 1990.]

LYNCH & FREYTAG, Plaintiff and Appellant, v.
GARY M. COOPER, Defendant and Appellant.

COUNSEL

Epport & Kaseff, Victor M. Epport and Steven N. Richman for Plaintiff and Appellant.

Gary M. Cooper, in pro. per., for Defendant and Appellant.

OPINION

JOHNSON, J.—

### FACTS AND PROCEEDINGS BELOW

Defendant Gary M. Cooper appeals from a judgment in favor of Lynch & Freytag for breach of contract based on his failure to pay rent for office space he subleased from it and from the court's judgment in favor of Lynch & Freytag on Cooper's cross-complaint.[1] Lynch & Freytag appeals from the judgment in favor of Cooper on its claim for bad faith denial of the existence of a contract. We affirm the judgment.

---

[1] Cooper has not briefed any issues related to his cross-complaint therefore we treat that portion of the appeal as abandoned.

This lawsuit commenced as the result of a dispute between two law firms relating to a sublease of office space. On or about January 5, 1982, Lynch & Freytag, as sublessor, leased an office in its suite to Cooper. Cooper took possession of the premises and practiced law from the office. After paying rent to Lynch & Freytag pursuant to the sublease for a period of over two and one-half years, a dispute arose between the parties over calculation of a cost-of-living increase in the monthly rent. Both parties admit the amount of the dispute, which related to the method of calculation of the increase, was $7.84 per month.

Unable to resolve its dispute with Cooper over the rent increase, Lynch & Freytag filed an unlawful detainer action in March 1985, based on Cooper's ultimate refusal to pay any further rent under the sublease. In his answer to the complaint, Cooper admitted the existence of the sublease but denied owing the amount of rent claimed by Lynch & Freytag. His answer also raised several affirmative defenses to the unlawful detainer action.

██ ██ ██ ██ At a subsequent pretrial conference, Lynch & Freytag, apparently fearing a fatal defect in its notice to pay rent or quit,[2] requested permission to "withdraw" the issue of unlawful detainer and to proceed with the action as an ordinary civil suit for breach of contract based on Cooper's failure to pay rent due under the sublease. The trial court ordered the action to proceed as an ordinary civil action restoring the case to the civil calendar and affording Cooper 30 days in which to file an amended answer and cross-complaint if he chose to do so.

From that point on the action proceeded as an ordinary civil action and not according to the summary procedures for unlawful detainer. Cooper filed an amended answer and a cross-complaint for breach of the covenant of good faith and fair dealing and for interference with business relationships.

In his amended answer, Cooper, for the first time, denied the existence of the sublease. This resulted in Lynch & Freytag filing a supplemental complaint alleging bad faith denial of the existence of a contract based on the decision in *Seaman's Direct Buying Services, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158].

The case was tried before the court and judgment was awarded to Lynch & Freytag for rent due under the sublease plus costs and attorney's fees.

---

[2] An unlawful detainer action based on failure to pay rent must be preceded by a three-day notice to the tenant to pay rent or quit the premises. (Code Civ. Proc., § 1162, subd. 2.) Failure to state the exact amount of rent due in the notice is fatal to the subsequent unlawful detainer action. (*Nourafchan* v. *Miner* (1985) 169 Cal.App.3d 746, 753 [215 Cal.Rptr. 450].)

Judgment was awarded to Cooper on Lynch & Freytag's claim of bad faith denial of contract and judgment was awarded to Lynch & Freytag on Cooper's cross-complaint for bad faith and interference with business relationships. Both parties filed timely notices of appeal. Cooper designated the entire court file to be included in the transcript.[3]

I. *The Trial Court Properly Allowed Lynch & Freytag to Convert Its Unlawful Detainer Action Into an Ordinary Civil Action and Properly Awarded Damages Under the Supplemental Complaint.*

The trial court awarded judgment to Lynch & Freytag on its supplemental complaint for rent, damages and attorney's fees. Characterizing Lynch & Freytag's action as one for unlawful detainer, Cooper argues that it failed to prove unlawful detainer therefore it was not entitled to relief incidental to unlawful detainer in the nature of rent, damages and attorney's fees. (*Roberts* v. *Redlich* (1952) 111 Cal.App.2d 566, 569 [244 P.2d 933] ["If the plaintiff fails to prove an unlawful detainer he cannot be awarded damages in that action")]; see also *Markham* v. *Fralick* (1934) 2 Cal.2d 221, 227 [39 P.2d 804]; *Balassy* v. *Superior Court* (1986) 181 Cal.App.3d 1148, 1153 [226 Cal.Rptr. 817].) While Cooper's conclusion is undoubtedly correct, his premise is not. It is clear from the trial court's statement of decision the court awarded damages and attorney's fees under the first and third causes of action for breach of contract contained in Lynch & Freytag's supplemental complaint, not under the cause of action for unlawful detainer contained in the original complaint. Because Cooper's argument proceeds from a faulty premise, the argument must fail.

While it is true this case began as an unlawful detainer action, at a pretrial conference Lynch & Freytag informed the court it wished to withdraw the issue of unlawful detainer and proceed with the matter as an action for rent. The court agreed to allow the matter to proceed as an action for rent *with the understanding that henceforth the case would be treated as a normal civil action* and not as a summary proceeding for possession entitled to the special rules of procedure under Code of Civil Procedure sections 1161-1179a.[4] As the court correctly explained, "[U]nder the circumstances the court may proceed to treat the matter as an action for rent, [but] the

---

[3] Most of the material Cooper ordered included in the clerk's transcript was not reasonably related to the issues on appeal. Even as to documents that were relevant, many were duplicated again and again throughout the record. Under our authority to specify the award of costs on appeal we are requiring Cooper to pay Lynch & Freytag the costs of its copy of the clerk's transcript. (Cal. Rules of Court, rule 26(a) & (c).)

[4] For a discussion of the summary proceedings in an unlawful detainer action see, generally, Moskovitz et al. (1971) California Eviction Defense Manual; Goddard, California Landlord-Tenant Law and Procedure (1973) pages 91-138; 6 Miller & Starr, California Real Estate (2d ed. 1989) pages 407-466.

defendants are entitled to be relieved of any possible prejudice that might occur by virtue of the summary proceeding, summary nature of the unlawful detainer proceeding specifically, an opportunity to raise appropriate affirmative defenses that might not have been available in the unlawful detainer proceeding and to file a cross-complaint, if the defendant is so advised, neither of which were fully available to the defendant in the unlawful detainer proceeding." Cooper did both.

Nine months later Lynch & Freytag was granted permission to file a supplemental complaint. The first and third causes of action alleged breach of the sublease by failure to pay rent for office space and parking.[5] The supplemental complaint sought damages and attorney's fees but did not seek possession of Cooper's office or parking space.

With the filing of the supplemental complaint the unlawful detainer claim was dead for all intents and purposes. Lynch & Freytag was no longer seeking possession of the subleased premises and the case was no longer being prosecuted as a summary proceeding. The action was tried as an action for breach of contract not as an unlawful detainer and, as mentioned above, the judgment was specifically based on the breach of contract counts of the supplemental complaint.

Cooper claims the only time an unlawful detainer action can be "converted" into a regular civil proceeding is when possession of the property is no longer in issue because possession has been delivered to the lessor before trial or, if there is no trial, before judgment is entered. (See Civ. Code, § 1952.3, subd. (a).)[6]

We disagree.

■ It is well-established an action for unlawful detainer can co-exist with other causes of action in the same complaint so long as the entire case is treated as an ordinary civil action, not as a summary proceeding. For example, in *Martin* v. *Pacific Southwest Royalties* (1940) 41 Cal.App.2d 161, 167-168 [106 P.2d 443], judgment for the plaintiff was affirmed on a complaint pleading both unlawful detainer and quiet title counts. The court agreed use of the three-day unlawful detainer summons instead of the normal civil summons was error but found defendant had waived that defect by

---

[5] The second cause of action for breach of the covenant of good faith and fair dealing is discussed *infra*, at pages 610-614.

[6] Civil Code section 1952.3, subdivision (a) provides, in relevant part; "[I]f the lessor brings an unlawful detainer proceeding and possession of the property is no longer in issue because possession of the property has been delivered to the lessor before trial or, if there is no trial, before judgment is entered, the case becomes an ordinary civil action . . . ."

filing its answer within the three-day period. In a discussion pertinent to the case before us, the court stated, "The fact that the complaint was entitled as an unlawful detainer action and the summons entitled as an unlawful detainer summons does not determine the character of the action. Both the unlawful detainer and the quiet title counts of the complaint were in fact answered by defendant, thus putting all material allegations of both counts in issue. The evidence introduced was equally applicable to both counts. The theory upon which the case was tried is to be ascertained by reference to the issues framed by the pleadings and to findings made by the court. The findings of fact are clearly sufficient to sustain a judgment based upon the quiet title count. Assuming the unlawful detainer count to be defective, we must presume that the judgment was based solely upon the quiet title count, the one which supports it." (*Id.* at p. 168, citations omitted.) Similarly, in *Tropical Investment Co.* v. *Brown* (1919) 45 Cal.App. 205, 210 [187 P. 133] the court upheld a judgment for possession and damages in an action alleging counts for unlawful detainer and ejectment. In this case, too, the court noted the defendant should have moved to quash the three-day summons but her failure to do so waived the defect.

As we stated in *Minelian* v. *Manzella* (1989) 215 Cal.App.3d 457, 465 [263 Cal.Rptr. 597], " 'The purpose of the unlawful detainer statutes is to provide the landlord with a summary, expeditious way of getting back his property *when a tenant fails to pay the rent* or refuses to vacate the premises at the end of his tenancy. If a defendant were allowed to assert affirmative defenses or cross-claims which were *irrelevant to the right of immediate possession,* the summary character of the proceedings would be lost. A defense which "arises out of the subject matter" of the original suit, and, thus, is permitted in the usual case, is normally excluded in an unlawful detainer if the defense is extrinsic to the issue of possession. [Citation.] This does not mean the defendant may not present any defense; rather, he may only assert those defenses which, if proven, would either *preserve his possession* as a tenant or preclude the landlord from recovering possession. [Citation.]' " (Quoting from *Nork* v. *Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410, 413 [140 Cal.Rptr. 734], italics added.)

■ It would obviously be unfair to require the defendant-tenant to defend against ordinary civil actions under the constraints of the summary procedure in unlawful detainer actions. Indeed, the constitutionality of these summary procedures is based on their limitation to the single issue of right to possession and incidental damages. (*Lindsey* v. *Normet* (1972) 405 U.S. 56, 64-66 [31 L.Ed.2d 36, 45-47, 92 S.Ct. 862]; *Deal* v. *Municipal Court* (1984) 157 Cal.App.3d 991, 996 [204 Cal.Rptr. 79].) ■ Where, as here, those constraints are removed and the action proceeds as an ordinary civil action for rent there is no prejudice to the defendant.

The trial court's ruling in this case permitting the action to proceed as an ordinary breach of contract case is consistent with *Karz v. Mecham* (1981) 120 Cal.App.3d Supp. 1, 6 [174 Cal.Rptr. 310], another case in which the unlawful detainer action could not be converted to an ordinary civil action under Civil Code section 1952.3. In *Karz*, the appellate court upheld a judgment for defendant in an unlawful detainer action on the ground the action was fatally defective because the plaintiff had never served the prerequisite notice on the defendant. (Code Civ. Proc., § 1161.) Because the unlawful detainer action was defective, it could not be converted into an ordinary civil action under Civil Code section 1952.3. The court noted, however, "[t]he trial court could have removed this case from the trial calendar granting plaintiff leave to amend his complaint so as to proceed as an ordinary civil action . . . ." This is essentially what the trial court did in the case before us.[7]

There is no conflict between our holding and Civil Code section 1952.3. This is not a case in which the landlord brought a "bogus and fraudulent" unlawful detainer action in order to take advantage of the summary proceedings afforded unlawful detainer actions. (*Karz v. Mecham, supra*, 120 Cal.App.3d 1 at p. Supp. 6.) Here the landlord gave up the summary proceedings and proceeded as in an ordinary civil action. Nor is this a case like *Hudec v. Robertson* (1989) 210 Cal.App.3d 1156, 1165 [258 Cal.Rptr. 868], in which the landlord, after a jury verdict for the defendant, attempted to convert his unlawful detainer action into an action by rent through a posttrial motion. (But see *Canal-Randolph Anaheim, Inc. v. Wilkoski* (1978) 78 Cal.App.3d 477, 493-494 [144 Cal.Rptr. 474].) Here, the action was converted to an ordinary civil action long before trial and Cooper was afforded all the procedures available to a litigant in such an action.

II. *The Tort of Bad Faith Denial of the Existence of a Contract Is Not Committed Through Allegations in the Answer to a Complaint.*

In *Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra*, 36 Cal.3d at page 769, our Supreme Court established a new tort of bad faith denial of the existence of a contract. (See *Rogoff v. Grabowski* (1988) 200 Cal.App.3d 624, 629-630 [246 Cal.Rptr. 185].) ▪▪▪ The question in the case before us is whether this new tort applies in situations where the denial of the existence of a contract occurs only in the defendant's answer to the complaint.[8] We hold it does not.

---

[7] The better practice would have been to order Lynch & Freytag to file an amended complaint. The result, however, would have been the same.

[8] Lynch & Freytag argues Cooper's denial of the existence of the sublease occurred prior to his answer to the complaint. The evidence does not support this claim.

The contours of this new tort have perplexed the appellate courts almost from the day *Seaman's* was filed. (See *Quigley* v. *Pet, Inc.* (1984) 162 Cal.App.3d 877, 889-892 [208 Cal.Rptr. 394]; and see *Air-Sea Forwarders, Inc.* v. *Air Asia Co., Ltd.* (9th Cir. 1989) 880 F.2d 176, 185; *Elxsi* v. *Kukje America Corp.* (N.D.Cal. 1987) 672 F.Supp. 1294, 1299 [summarizing inconsistent appellate court opinions post-*Seaman's*].) Given the uncertainties surrounding this tort of denial of the existence of a contract and the public policy reasons for *not* extending it to pleadings, we affirm the trial court judgment.

 Lynch & Freytag has failed to cite any case, nor have we found one, in which the court imposed tort liability for the bad faith denial of the existence of a contract solely *in an answer* to a complaint.[9] In *Seaman's* the defendant's denial it had a contract with plaintiff is what triggered the lawsuit. Plaintiff requested defendant, Standard Oil Co., to stipulate to the existence of a contract because plaintiff could not survive economically throughout the time that a trial would take. "In reply, *Standard's* representative laughed and said, 'see you in court.' " (36 Cal.3d at p. 762, italics added.) It was this adopting of a "stonewall position" ("see you in court") without probable cause and with no belief in the existence of a defense which, if proved, justified a tort remedy. (36 Cal.3d at pp. 769-770.)

In contrast, Cooper did not take a "stonewall position" with Lynch & Freytag. As Lynch & Freytag alleges in its supplemental complaint and admits in its brief, Cooper initially admitted the existence of the sublease between the parties but disputed Lynch & Freytag's construction of the pass-through provision. It was not until Cooper filed his first amended answer to the unlawful detainer complaint that he denied the existence of the sublease.

Although we have found no cases holding *Seaman's* applies to denial of the existence of a contract in the answer to the complaint, we have found two cases suggesting it does not.

---

[9] Lynch & Freytag contends that *Air-Sea Forwarders, Inc.* v. *Air Asia Co., Ltd., supra,* upheld tort liability for the bad faith denial of the existence of a contract in an answer to a complaint. We concede there is a basis for concluding the only denial of the contract's existence occurred in the answer to the complaint (880 F.2d at pp. 180, 188.) However, the opinion is not clear on this point for the understandable reason this point was not raised as an issue in the appeal. (But see *Oki America, Inc.* v. *Microtech Intern., Inc.* (9th Cir. 1989) 872 F.2d 312, 314 [decided two months prior to *Air-Sea Forwarders* and holding *Seaman's* does *not* apply to denial of the existence of a contract in an answer].) Opinions are not authority for issues they do not consider. (*Palmer* v. *Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 539 [238 Cal.Rptr. 363].)

In *Palmer* v. *Ted Stevens Honda, Inc., supra*, plaintiff brought an action against defendant for fraud and bad faith denial of the existence of a contract, among other counts. The appellate court held the trial court improperly admitted evidence of defendant's trial tactics to prove bad faith on defendant's part. In discussing the tort of bad faith denial of the existence of a contract the court stated, "While the essence of this tort is a defendant's 'stone-wall' denial of the existence of a contract, neither *Seaman's* nor its progeny suggest that the very manner in which a defendant conducts its defense in the litigation can be further evidence of bad faith. (*Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1115-1119 [207 Cal.Rptr. 123]; *Quigley* v. *Pet, Inc., supra*, 162 Cal.App.3d 877, 881-885; *Multiplex Ins. Agency, Inc.* v. *California Life Ins. Co.* (1987) 189 Cal.App.3d 925, 928-930 [235 Cal.Rptr. 12].)" (193 Cal.App.3d at p. 537.)

The court in *Palmer* gave several reasons why defendant's litigation conduct is not relevant to the tort of bad faith denial of a contract. In an ordinary commercial setting such as existed in *Palmer* (and exists in the present case) there is no obligation to treat the plaintiff fairly outside the contract at issue. (*Id.* at pp. 538-539.) Furthermore, subjecting defendant to tort liability would unreasonably impair the defendant's right to defend himself. (*Id.* at p. 540.)

Similarly, in *Oki America, supra*, the court focused on the conflict that would arise between the new tort of contract denial and accepted rules of pleading as a reason for not applying *Seaman's* to answers denying the existence of a contract. In this case, defendant filed a counterclaim against Oki America to which Oki America answered, as an affirmative defense, that "[t]here was no contract entered into between the parties." Defendant then filed a second counterclaim alleging Oki America's denial of a contract in its answer constituted a bad faith denial of the existence of a contract. In upholding summary judgment for Oki America on the bad faith claim the court noted, "*Oki* alleged three mutually inconsistent affirmative defenses: (1) no contract existed, (2) course of dealing and usage of trade permitted it to 'cancel its performance at any time prior to 30 days before shipment date,' and (3) performance was legally impossible. [¶] Such inconsistent pleading is permissible under Fed.R.Civ.P. 8(e) (2). Therefore, as the Fifth Circuit has ruled, 'one of two inconsistent pleas cannot be used as evidence in the trial of the other' because a contrary rule 'would place a litigant at his peril in exercising the liberal pleading . . . provisions of the Federal Rules.' *Continental Ins. Co.* v. *Sherman*, 439 F.2d 1294, 1298-1299 (5th Cir.1971.) In addition, this pleading is not sufficient to establish the elements of the tort: 'once litigation has commenced, the actions taken in its defense are not . . . probative of whether [a] defendant in bad faith denied the contractual

obligation prior to the lawsuit.'" (872 F.2d at pp. 313-314, citation omitted.)

In California, as in the federal courts, inconsistent defenses have long been recognized and permitted. (See, e.g., *Cass* v. *Rochester* (1917) 174 Cal. 358, 362 [163 P. 212]; *Stromerson* v. *Averill* (1943) 22 Cal.2d 808, 816 [141 P.2d 732] (citing cases); *Elconin* v. *Yalen* (1929) 208 Cal. 546, 548 [282 P. 791]; *Radinsky* v. *T. W. Thomas, Inc.* (1968) 264 Cal.App.2d 75, 77, 81 [70 Cal.Rptr. 150] [inconsistent contract defenses]; *Berger* v. *Steiner* (1945) 72 Cal.App.2d 208, 218 [164 P.2d 559] [same].) "The explanation," according to Witkin, "is that the defendant cannot always know in advance precisely what his proof will show. His contradictory denials and affirmative allegations of fact do not necessarily indicate perjury or fraud; he may simply be attempting to raise all the issues on which he may have some chance of success." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1009, p. 429.)

In the case before us, as in *Oki America,* Cooper alleged inconsistent defenses. His amended answer denied Lynch & Freytag sublet office space to him but also alleged Lynch & Freytag had failed to make a proper demand on him for rent and refused to accept his rent payments. He appears to have been attempting to raise all the issues on which he may have had some chance of success.

If *Seaman's* were applied to answers, a conflict would also arise between the tort of denial of contract and the statutory right to file a general denial.[10] Because general denials are common in routine contract actions, applying *Seaman's* to such cases would have an enormous impact on routine commercial litigation. And, while some might argue the impact would be beneficial (see *Burke* v. *Superior Court* (1969) 71 Cal.2d 276, 282 [78 Cal.Rptr. 481, 455 P.2d 409]; *Williamson* v. *Clapper* (1948) 88 Cal.App.2d 645, 647 [199 P.2d 337] [criticizing use of general denials]), we are not prepared to undertake such a reform given the failure by the parties to brief this point and our uncertainty the *Seaman's* court intended such a result.

Furthermore, allowing a plaintiff to sue for "bad faith" solely on the basis the answer to a complaint denies the existence of a contract would encourage multiple litigation: a suit by the plaintiff on the merits and, if that suit is successful, a suit for bad faith denial of contract. Of course, if the bad faith defense suit is unsuccessful, the defendant could then turn around and become a plaintiff in a malicious prosecution suit. (See *Moradi-Shalal* v.

---

[10] Code of Civil Procedure section 431.30, subdivision (d) provides, with some exceptions, "a general denial is sufficient [to put] in issue the material allegations of the complaint."

*Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 301 [250 Cal.Rptr. 116, 758 P.2d 58].) Thus, no matter how trivial the original dispute (in the present case $7.84 per month) "the allure of punitive damages . . . entices into court parties who might otherwise be inclined to resolve their differences." (*Oki America, supra*, 872 F.2d at p. 315 (Kozinski, J., conc.).)

Certainly, Cooper's conduct in the present case is nothing like the outrageous conduct of Standard Oil in *Seaman's*. This litigation did not arise out of Cooper's "stonewalling" Lynch & Freytag. It arose out of a dispute over construction of the contract between the parties; not over the contract's existence. The parties were already in court before Cooper amended his answer to deny existence of the contract. Proof of the existence of the contract in this case was clearly not a major evidentiary issue and the damage to Lynch & Freytag from Cooper's denial of the contract would appear to be de minimis at best. Indeed, the general damages prayed for by Lynch & Freytag on the bad faith cause of action are exactly the same as the damages it seeks for breach of the contract. The difference is the addition of a prayer for punitive damages. (See discussion above.)

## CONCLUSION

The parties and the attorneys representing them have managed to escalate a dispute over $7.84 a month into a superior court case that has lasted nearly five years, consumed an estimated four hundred hours of attorney time, used four days of trial time, produced four volumes of clerk's transcript (1228 pages) and resulted in two appeals and five appellate briefs. Something is wrong.

At a time when many indigent civil litigants must go without counsel (see *Quail* v. *Municipal Court* (1985) 171 Cal.App.3d 572, 577 [217 Cal.Rptr. 361] (Johnson, J., conc. & dis.)), and the State Bar Conference of Delegates, the Socorro Society and other leaders of the legal profession are calling on private attorneys to contribute at least 50 hours per year to pro bono representation, it is unconscionable for highly skilled attorneys to have used their time and resources to litigate a case over $7.84 a month.

## DISPOSITION

The judgment is affirmed. Each party to bear its own costs on appeal except that Lynch & Freytag is awarded its cost of one copy of the clerk's transcript. (Cal. Rules of Court, rule 26(a) & (c).)

Lillie, P. J., concurred in the judgment only.

**WOODS (Fred), J.,** concurring— ■■ ■ ■ ■ ■ ■ ■ ■ I concur in the judgment contained in the lead opinion for the additional reason that the tort of bad faith denial of the existence of a contract, pursuant to *Seaman's* has no applicability to this leasehold dispute between a sublessor/attorney and a sublessee/attorney.

The lead opinion contains an extensive explanation of why the landmark decision of our California Supreme Court in *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158] is inapposite where the denial of the existence of a contract occurs only in a defendant's answer to a complaint. I concur in this conclusion. However, the lead opinion fails to discuss the issue which is perplexing the bar and bench alike, namely, does the *Seaman's* case have any *general* viability at all, and, more importantly to the facts in the instant case, any *specific* viability to a leasehold dispute between lawyers, in view of the recent landmark decision by the California Supreme Court in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373].

The *Foley* decision is factually distant from the record in this case since *Foley* involved a termination of employment dispute. However, the comments in *Foley* at pages 687, 688 and footnote 27 at page 688, addressing the dictum in the *Seaman's* case which suggests a future expansion of the tort to employer/employee relationships cast serious doubts on the viability of the *Seaman's* case. These comments by the *Foley* court are as follows: "Dictum in *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158] also is not helpful. There, the court focused on a standard commercial contract. We stated, '[w]hile the proposition that the law implies a covenant of good faith and fair dealing in all contracts is well established, the proposition advanced by Seaman's—that breach of the covenant always gives rise to an action in tort—is not so clear.' (*Id.* at p. 768.) We also observed that the propriety of a tort action for breach of the implied covenant in the insurance context was based on the 'special relationship' of insurer and insured, and continued, 'No doubt there are other relationships with similar characteristics and deserving of similar legal treatment.' (*Id.* at pp. 768-769.) In a footnote to the last statement, we referred to *Tameny*, observing that there 'this court intimated that breach of the covenant of good faith and fair dealing in the employment relationship might give rise to tort remedies. That relationship has some of the same characteristics as the relationship between insurer and insured.' (*Id.* at p. 769, fn. 6.) *This allusion to the potential for extending tort remedies for breach of the implied covenant was tentative at best.*[27]" (Italics added.)

The court's footnote 27 provides: "Contrary to Justice Broussard's suggestion (see opn. by Broussard, J., *post*, at p. 704), *our statements in Sea-*

*man's were far from a definitive signal of approval for a tort remedy for breach of the covenant in employment cases.* If anything, the reference highlighted the fact that this question remained to be decided by this court."[1] (Italics added.)

The *Foley* court, having declined to extend the *Seaman's* tort of "bad faith denial of a contract" to an employer/employee relationship, appears to have severely undercut the assumption in the lead opinion that the *Seaman's* tort is applicable to a sublessor/sublessee relationship dispute between members of the bar. The general viability of *Seaman's* in view of *Foley* appears to be tenuous at best. The specific viability of *Seaman's* in the context of this case is undoubtedly foreclosed.

---

[1] Justice Broussard's suggestion at page 704 of *Foley* is as follows: "In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158], we concluded a tort action was available for breach of a commercial contract only when the breaching party denied in bad faith the existance of the contract. (P. 769.) We noted that tort remedies had a broader scope in insurance cases because of the special relationship between insurer and insured, and added that 'no doubt there are other relationships with similar characteristics and deserving of similar legal treatment.' (P. 769.) The footnote to that sentence noted that in *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167, 179, footnote 12, 'this court intimated that breach of the covenant of good faith and fair dealing in the employment relationship might give rise to tort remedies. That relationship has some of the same characteristics as the relationship between insurer and insured.' (36 Cal.3d at p. 769, fn. 6.) Coming after published decisions in *Cleary* v. *American Airlines, Inc., supra,* 111 Cal.App.3d 443, *Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d 467, and *Crosier* v. *United Parcel Service, supra,* 150 Cal.App.3d 1132, this language signaled the court's approval of a tort remedy for bad faith discharge." (Fn. omitted.)