948 P.2d 570

**CR DISPATCH SERVICE, INC.,
Plaintiff–Appellee,**

v.

**DOVE AUTO, INC., Defendant–Appellant.**

**No. 20292.**

Intermediate Court of Appeals of Hawai'i.

Oct. 14, 1997.

Leighton K. Lee, Honolulu (Suematsu & Lee, of counsel), on the briefs, for defendant–appellant.

Donald K.O. Wong, David J. Minkin and David R. Harada–Stone, Honolulu (McCorriston Miho Miller & Mukai, of counsel), on the brief, for plaintiff–appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

BURNS, Chief Judge.

Defendant Dove Auto, Inc. (Dove Auto) appeals the October 18, 1996 Judgment for Possession and the October 18, 1996 Writ of Possession, both of which were entered by the district court in favor of Plaintiff CR Dispatch Service, Inc. (CRDS). We have appellate jurisdiction. *Ciesla v. Reddish*, 78 Hawai'i 18, 889 P.2d 702 (1995). We vacate both the October 18, 1996 Judgment for Possession and the October 18, 1996 Writ of Possession. We remand for further proceedings consistent with this opinion.

This case involves a sublessee/sub-sublessor, a sub-sublessee/sub-sub-sublessor, and a sub-sub-sublessee. The sublessee/sub-sublessor is Morris Unten (Morris). The sub-sublessee/sub-sub-sublessor is CRDS. Its president is Stephen J. Misajon (Misajon). The sub-sub-sublessee is Dove Auto, and its president is Gene Unten (Gene), the brother of Morris.

In this case, the Complaint filed by CRDS sought a writ of possession and a judgment for money owed by Dove Auto to CRDS (the "Dove Auto owes CRDS debt") pursuant to the sub-sub-sublease. Dove Auto's counterclaim sought to pay the debt by applying, in set-off,[1] the debt CRDS allegedly owed Morris, which account receivable was assigned by Morris to his brother Gene, who assigned it to Dove Auto (the "alleged CRDS owes Morris/Gene/Dove Auto debt").

Hawai'i Revised Statutes (HRS) § 604–5 (Supp.1996) specifies in relevant part as follows:

**Civil jurisdiction.** (a) Except as otherwise provided, the district courts shall have jurisdiction in all civil actions where the debt, amount, damages, or value of the property claimed does not exceed $20,000, except in civil actions involving summary possession or ejectment, in which case the district court shall have jurisdiction over any counterclaim otherwise properly brought before the district court by any defendant in the action if the counterclaim arises out of and refers to the land or premises the possession of which is being sought, regardless of the value of the debt, amount, damages, or property claim contained in the counterclaim[.]

We conclude that the "alleged CRDS owes Morris/Gene/Dove Auto debt" satisfies the statutory jurisdictional requirements applicable to counterclaims. Therefore, the district court has jurisdiction over Dove Auto's counterclaim. Moreover, the "alleged CRDS owes Morris/Gene/Dove Auto debt" is great-

---

1. "Set-off" is the "[r]emedy employed by defendant to discharge or reduce plaintiff's demand by an opposite one arising from [a] transaction which is extrinsic to plaintiff's cause of action. *Edmonds v. Stratton*, Mo.App., 457 S.W.2d 228, 232." *Black's Law Dictionary*, (6th ed. 1990).

er than the "Dove Auto owes CRDS debt." Therefore, the district court must decide the counterclaim before it decides CRDS' request for a writ of possession.

## BACKGROUND

It appears uncontested that the relevant relationships are essentially as follows:[2] Morris sub-subleased a parcel of land with a warehouse-type building on it to CRDS. The sub-sublease commenced on October 15, 1969 and terminates on December 20, 2008.[3]

On July 1, 1978, CRDS sub-sub-subleased a part of the warehouse to Dove Auto.

In January 1989, the sublessor to Morris increased the monthly sublease rent Morris was obligated to pay from $3,607.16 to $7,828.05[4] ($7,514.91 plus general excise tax of $313.14). Allegedly, the Morris to CRDS sub-sublease obligated CRDS to pay an identical increase to Morris. Consequently, Morris told CRDS in an October 1, 1989 letter that Morris would recover the 1989 one-year deficiency during CRDS' five-year sub-sublease term from January 1, 1990 through December 31, 1995 by charging CRDS an additional $844.18 per month for the 60 months. Morris also added an "allowable" $192.69, computed at one cent per square foot, and $1,746.24 for CRDS' mezzanine renovations that had resulted in an increase of the square footage being rented. Thus, the new rent Morris wanted CRDS to pay was $11,053.32 ($7,828.05, plus $844.18, plus $192.69, plus $1,746.24, plus $442.16 general

excise tax at .04167). Misajon signed the letter after adding the following underscored typewritten numbers and words: "The above described monthly rent is agreed to and accepted this *27th* day of *December*, 1989[,] *subject to review of lease as to increase in additional improvements and shortage increase of $844.18*." Thereafter, CRDS paid Morris $9,667.47 per month, an alleged shortage of $1,385.85 per month.

On June 30, 1994, Morris assigned his interest as sub-sublessor to Gene. The alleged "CRDS owes Morris debt" was thereby converted into the alleged "CRDS owes Morris/Gene debt."

On May 13, 1996, CRDS filed a Complaint against Dove Auto seeking a writ of possession and a judgment for the alleged "Dove Auto owes CRDS debt" in the amount of $21,217.75.[5] Soon thereafter, Gene assigned the alleged "CRDS owes Morris/Gene debt" to Dove Auto. The alleged "CRDS owes Morris/Gene debt" was thereby converted into the alleged "CRDS owes Morris/Gene/Dove Auto debt."

On May 24, 1996, Dove Auto filed its answer opposing the Complaint and alleging that CRDS "was negligent and/or in breach of its duties or responsibilities which caused or contributed to any injuries or damages it may have received"; failure to mitigate; estoppel; and "all affirmative defenses pursuant to Rule 8(c) of the District Court Rules of Civil Procedure not mentioned above."

2. The record is not as clear as the parties represent it to be.

3. Although the parties speak of a sub-sublease from Morris Unten (Morris) to Plaintiff CR Dispatch Service, Inc. (CRDS), a part of CRDS's Exhibit No. 1 is a July 1, 1978 *"ASSIGNMENT OF LEASE"* from Assurance Auto Services, Inc., Morris, President, to CRDS which assigns "[t]hat certain Lease dated October 15, 1969, ... for and during the full unexpired term of said Lease[.]" If the corporation of which Morris was president assigned its rights in the October 15, 1969 Lease to CRDS, we do not know how Morris retained rights as a sub-sublessor to CRDS.

4. William G. Lacy, Jr.'s December 29, 1988 letter to Morris said that the new rent was $7,514.91 plus $312.62, a total of $7,827.53.

5. Hawai'i Revised Statutes § 666–7 (1993) states as follows:

> **Jurisdiction; joinder.** In any action for summary possession begun under this chapter, the plaintiff may join claims for rent, lodging, board, profits, damages, and waste, where these arise out of and refer to the land or premises, irrespective of the amount claimed.
>
> In any such action, whether the ground or cause is nonpayment of rent or otherwise, the plaintiff may join in the action a prayer for accrued rent due, if any, and also for rent, profits, and damages up to the time of judgment, if such is rendered in the plaintiff's favor, without prejudice to such action or ground for summary possession as may be set forth in the complaint.

On May 24, 1996, Dove Auto filed a Counterclaim seeking judgment for the alleged "CRDS owes Morris/Gene/Dove Auto debt" in the amount of $99,781.20. In its Opening Brief, Dove Auto contends that "[t]he Counterclaim alleged that [Dove Auto] had paid the rent it owed to [CRDS] through the use of an assignment set off." This statement misrepresents the record. Dove Auto's Counterclaim sought judgment for the alleged "CRDS owes Morris/Gene/Dove Auto debt." It said nothing about "an assignment set off."

However, Misajon testified in relevant part as follows:

Q. Okay. And, do you recall that there have been instances where there have been set-offs between the rent that [CRDS] owed [Gene] with regard to the rent owed by [Dove Auto to CRDS]?

A. I don't recall the particulars, but by mutual agreement, yes.

Q. That was done?

A. Yes.

Moreover, Gene testified in relevant part as follows:

Q. [Gene], as—as the individual above [CRDS], or the landlord for [CRDS], and the president of [Dove Auto], can you tell the Court if you have or are willing to assign any monies owed to you by [CRDS] to [Dove Auto]?

A. Yes. I'm willing to assign the debt that's owed to [CRDS].

Q. Okay. No, [Gene], [Misajon] already testified that this arrangement has been done before where through mutual understanding—or negotiation, it was a set-off where some monies owed by [CRDS] to yourself was set off by rent owed from [Dove Auto] to [CRDS]. Do you recall that also?

A. Yes, I do.

In its oral decision, the district court found that the principal sum of the "Dove Auto owes CRDS debt" was "$35,767.61 in rent, and a portion of the water charges[.]" The district court concluded that, assuming the alleged "CRDS owes Morris/Gene/Dove Auto debt" is a valid debt, "that does not relieve [Dove Auto] from the obligations that apply under the [CRDS sub-sub-sublease to Dove Auto]. That is a separately viable claim that can be pursued."

The district court further stated in relevant part as follows:

THE COURT: ...

* * *

The Court notes that the assignment, in any event in this case, did not occur until after the commencement of litigation, the instant litigation. The Court notes that there is no evidence indicating any agreement that obligations that arose under the [CRDS sub-sub-sublease to Dove Auto] were tied in to obligations that arose under the [Morris sub-sublease to CRDS.]

Therefore, the Court finds that the material allegations of the complaint in this case have been established by a preponderance of the evidence. The Court will, therefore, authorize the issuance of a Judgment for Possession and a Writ of Possession.

* * *

THE COURT: All right. The Writ will be effective forthwith. The Court will establish a pretrial conference regarding the issue of damages[.]

## POINTS ON APPEAL

Dove Auto contends that the law permits it to pay the "Dove Auto owes CRDS debt" by applying the alleged "CRDS owes Morris/Gene/Dove Auto debt" in set-off. Consequently, it contends that: (1) the district court was wrong in concluding that there was no evidence of any relevance between the alleged "Dove Auto owes CRDS debt" and the "CRDS owes Morris/Gene/Dove Auto debt"; (2) the district court erred in its ruling that the alleged "CRDS owes Morris/Gene/Dove Auto debt" was irrelevant to CRDS' right to a writ of possession for Dove Auto's non-payment of the "Dove Auto owes CRDS debt"; and (3) since the assignment by Gene to Dove Auto occurred pre-Writ of Possession, the fact that it occurred post-Complaint is irrelevant as a matter of law.

The situation is this: Pursuant to the sub-sub-sublease, Dove Auto owes rent to CRDS; and pursuant to the sub-sublease, by an assignment from Morris to Gene, and an assignment from Gene to Dove Auto, CRDS allegedly owes sub-sublease rent to Dove Auto.

The questions are whether Dove Auto's attempt to satisfy its obligation to pay the sub-sub-sublease rent it owes to CRDS by applying the sub-sublease rent CRDS allegedly owes Dove Auto in set-off is (A) a temporary defense to CRDS' right to summary possession until the district court decides the question whether CRDS owes a sufficient amount of sub-sublease rent to Dove Auto to effect a complete set-off and (B) if the answer to question (A) is yes, then is it a permanent defense? The answer to questions (A) and (B) is yes.

### DISCUSSION

In the following words, HRS § 666–1 (1993) states the requirements for a successful summary possession action:

> Whenever any lessee or tenant of any lands or tenements, or any person holding under the lessee or tenant, holds possession of lands or tenements without right, after the termination of the tenancy, either by passage of time or by reason of any forfeiture, under the conditions or covenants in a lease, or if a tenant by parol, by a notice to quit of at least ten days, the person entitled to the premises may be restored to the possession thereof in a manner hereinafter provided.

In some other states, summary possession actions are called unlawful detainer proceedings. An unlawful detainer proceeding is defined as a "statutory proceeding by which a landlord can legally evict a tenant in default on his or her rent." *Black's Law Dictionary*, 1536 (6th ed. 1990). Unlawful detainer proceedings allow a landlord a summary, expeditious way to recover its property and "concern only the right of possession of realty." *Black's Law Dictionary*, 1536 (6th ed. 1990) citing *McCracken v. Wright*, 159 Kan. 615, 157 P.2d 814, 817 (1945).

In California, it has been held that if a tenant could bring defenses unrelated to possession, the summary nature of the proceedings would be lost. *Nork v. Pacific Coast Med. Enterprises*, 73 Cal.App.3d 410, 140 Cal.Rptr. 734, 735 (1977); *Lynch & Freytag v. Cooper*, 218 Cal.App.3d 603, 267 Cal.Rptr. 189 (1990). Only defenses which would directly affect the right of possession as a tenant or preclude a landlord from recovering possession are allowed. *Nork*, 140 Cal. Rptr. at 735; *Lynch*, 267 Cal.Rptr. at 192. Therefore, in California, a tenant cannot apply an earlier, unrelated debt owed by the landlord to the tenant in set-off of past due rent.

The California rule was the rule in Hawai'i. In *State v. Hilo Metals Co.*, 53 Haw. 642, 500 P.2d 743 (1972), Hilo Metals attempted to apply the alleged $19,200 rental value of a portion of the leased premises taken by the State in set-off against the $8,388.35 rent and back taxes it owed the State and thereby stop the State's summary possession action. The Hawai'i Supreme Court decided that "the district court lacked jurisdiction to adjudicate a counterclaim in excess of the $2000 limit imposed by HRS § 604–5." *Id.* at 644, 500 P.2d at 744 (footnote omitted).

However, in response to the *Hilo Metals Co.* opinion, HRS § 604–5 was amended in 1975 "to expand the jurisdiction of the district courts in cases involving summary possession or ejectment where the defendant may have a valid counterclaim for a debt, amount, or damages, or value of property in excess of $5000[.]" As amended, HRS § 604–5(a) stated in relevant part as follows:

> [T]he district courts shall have jurisdiction in all civil actions, where the debt, amount, or damages, or the value of the property claimed, does not exceed $5,000 except in civil actions involving summary possession or ejectment, in which case, the district court shall have jurisdiction over any counterclaim otherwise properly brought before the district court by any defendant in such summary possession or ejectment action if said counterclaim arises out of and refers to the land or premises, the possession of which is being sought, regardless of the value of the debt, amount, damages or

property claim contained in the counter-claim[.]

1975 Haw. Sess. Laws Act 97, at 174–75.

In explaining the reason for this expansion of the district court's jurisdiction, the House Committee on Judiciary stated in relevant part as follows:

The present law has been interpreted to require a Defendant in a summary possession or ejectment action to take any claim such person may have against the Plaintiff which related to the subject property, but exceed[s] the jurisdictiona[l] limit of the District Court to the Circuit Court for disposition. This created the dilemma in which a person with a good counterclaim in a summary possession or ejectment action could find himself or herself dispossessed before the counterclaim, which might have offset the claim on which the initial action was brought, could be decided. This bill attempts to correct this situation by expanding the jurisdictional limits of the District Court, [when the counterclaim] arises out of or refers to the land or premises for which possession is being sought. In this way, the claims of the Defendant relating to the land or premises for which possession is being sought, can be resolved in one for[u]m rather than requiring the Defendant to go to the Circuit Court for his claim if it exceeds the jurisdictional amount of the District Court[.]

House Stand. Comm. Rep. No. 417, on House Bill No. 643, which was enacted as Act 97, in 1975 House Journal, at 1144.

Thus, the dispositive question is whether Dove Auto's Counterclaim against CRDS "arises out of and refers to the land or premises the possession of which is being sought." If the answer is no, the district court does not have jurisdiction to decide the Counterclaim. However, the answer is yes. The Counterclaim arises out of and refers to the sub-sublease. Thus, the district court erred when it entered its October 18, 1996 Judgment for Possession and October 18, 1996 Writ of Possession before it decided the Counterclaim.[6]

### CONCLUSION

Accordingly, we vacate the October 18, 1996 Judgment for Possession and the October 18, 1996 Writ of Possession. We remand for further proceedings consistent with this opinion.

---

**6.** If a jury trial had been timely demanded on the Counterclaim pursuant to District Court Rules of Civil Procedure Rule 38, the Complaint's request for summary possession would have had to remain in the district court and the Counterclaim's request for a judgment for the alleged CRDS–owes–rent–to–Dove Auto-debt would have had to be transferred to the circuit court. *Lum v. Sun,* 70 Haw. 288, 769 P.2d 1091 (1989). It appears that the district court's decision on the Complaint's request for summary possession then would have had to await the circuit court's decision on the Counterclaim.