Filed 3/14/23  CFFC2, Inc. v. Bergstrom CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CFFC2, INC., | |
| Plaintiff and Appellant, | G060583 |
| v. | (Super. Ct. No. 30-2019-01100021) |
| CONNY BERGSTROM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Martha K. Gooding, Judge.  Affirmed.

Brian C. Ostler, Sr., for Plaintiff and Appellant.

Van Riper Law and David A. Van Riper for Defendant and Respondent.

The assignee of an attorney sued the attorney's former client for unpaid legal fees.  Following a bench trial, the trial court found the attorney's violation of his

duties to his client was so clear and serious it compelled forfeiture of all unpaid fees and costs. On appeal, the assignee argues the judgment was not supported by substantial evidence; we disagree. The assignee also argues the trial court erred by allowing the client to present testimony from an expert witness. We conclude the court did not err, but even assuming it did, any error was harmless because the court's findings were fully supported without consideration of the expert's testimony. Therefore, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Brian Ostler and the Law Offices of Brian C. Ostler, Sr., A.P.C. (collectively, Ostler) provided legal services to Bergstrom's Children's Stores, Inc., and Karl Bergstrom, its president and one of its owners.[1] Karl and his wife Conny Bergstrom were the trustees of the Karl A. Bergstrom and Conny R. Bergstrom 1975 Trusts, as restated in 2010 (the Bergstrom Family Trust).

Karl and Conny had two children—Pierre Bergstrom and Vickie Bergstrom Katnik. In 2012, Pierre's wife Deborah filed for dissolution of their marriage.

On December 16, 2013, Ostler entered into a written fee agreement with Karl, Conny, and Bergstrom's Children's Stores for the provision of legal services (the fee agreement). Neither Karl nor Conny, as a trustee of the Bergstrom Family Trust, was a party to the fee agreement. One of the matters specifically referenced in the fee agreement was Pierre and Deborah's dissolution proceeding.

One of the assets at issue in the dissolution was a residence in Newport Beach (the property). The property was the subject of a quitclaim deed recorded October 28, 2011, which named Pierre, Deborah, and Karl as joint tenants. In 2013, Deborah named Karl in a joinder action in the dissolution proceeding (the joinder action). The

---

[1] We will refer to the members of the Bergstrom family by their first names to avoid confusion; we intend no disrespect.

2

joinder action sought to determine Karl had no interest in the property, and the property was entirely held as community property of Deborah and Pierre. Deborah dismissed the joinder action against Karl in February 2014.

Karl signed a quitclaim deed, which was recorded on March 25, 2014, transferring his interest in the property to the trustees of the Bergstrom Family Trust.

Sometime in 2014, Ostler proposed to Karl a new legal strategy to obtain a judicial ruling on the validity of the Bergstrom Family Trust's interest in the property by filing a quiet title action against Pierre and Deborah. Ostler sent a draft of a proposed complaint to Karl on July 1, 2014, but Karl never approved it or authorized its filing.[2]

Karl passed away on August 14, 2014.

Just five days after Karl's death, Ostler met in person with Conny, Pierre, Vickie, and Vickie's adult children. At that meeting, Conny told Ostler she did not want to continue to spend money on attorney fees and costs related to Pierre's dissolution proceeding, and she did not want to file the new lawsuit Ostler was proposing. When Ostler suggested the quiet title action could help put Pierre in a better position (vis á vis Deborah) in the dissolution proceeding, Conny told Ostler the divorce was Pierre's business and she did not want to be part of it. Conny liked Deborah and did not want to do anything to help Pierre at Deborah's expense. Ostler told Conny she could not stop what Pierre and Karl had started and she should pursue the quiet title action because it was what Karl had wanted. Conny responded she was not Karl and she did not want to be involved in litigation. Ostler also told Conny she had to pursue the quiet title action

---

[2]    Several months earlier, Ostler sent Karl a proposed cross-complaint in the family law action. Karl and Conny signed a verification for this cross-complaint, which was never filed. A draft of the separate quiet title action was sent to Karl and Conny on July 1, 2014; the appellate record does not contain Karl's verification of that complaint. The proposed family law cross-complaint is also absent from the appellate record, so we cannot determine how close it was in substance to the quiet title complaint.

3

to protect the interests of the Bergstrom Family Trust, as well as her own interest in the property.

Ostler filed the quiet title action on August 29, 2014. In addition to the cause of action to quiet title, the complaint also alleged causes of action for declaratory relief and to impose an equitable lien. It was brought by Conny, individually and as trustee of the Bergstrom Family Trust, and named Pierre and Deborah as defendants.

Ostler began to bill Conny directly. The October 1, 2014 bill (which covered legal services provided in August and September 2014) was for $9,998.72: $9,765 in fees and $233.72 in costs. The November 5, 2014 bill was for $2,903.82: $2,500 in fees, $5.05 in costs, and $398.77 in interest on the overdue balance. The December 6, 2014 bill was for $1,157.58: $960 in fees and $197.58 in interest. The March 4, 2015 bill was for $13,532.41: $12,412.50 in fees, $646.02 in costs, and $473.89 in interest. The May 15, 2015 bill was for $19,393.96: $18,842.50 in fees, $203.51 in costs, and $347.95 in interest. The July 6, 2015 bill was for $21,140.20: $20,395 in fees, $355.05 in costs, and $390.15 in interest. The September 7, 2015 bill was for $55,000.24: $51,855 in fees, $2,460.68 in costs, and $684.56 in interest. The October 22, 2015 bill was for $19,853.68: $18,115 in fees, $724.69 in costs, and $1,013.99 in interest. The June 20, 2016 bill was for $22,964.93: $15,772.50 in fees, $588.13 in costs, and $6,604.30 in interest. The final bill from Ostler to Conny, dated March 12, 2018, did not include any new charges for fees or costs, but showed a balance due of $144,561.93.

Because of the size of the bills, in late 2014 Conny asked to make monthly payments of $5,000 on any amounts billed. Ostler agreed, and from November 2014 through September 2015, Conny paid at least $5,000 per month to Ostler.

Vickie called Ostler in September 2015 at Conny's request. Conny felt Ostler was not listening to her when she continued to say she wanted the quiet title litigation to end. When Vickie explained to Ostler Conny did not understand what was

4

happening and did not want to be involved in the quiet title action, Ostler became argumentative and combative and told Vickie if Conny dismissed the quiet title action, she would not get her share of the property. Ostler reiterated Conny had to pursue the litigation to preserve her share of the property.

In a November 6, 2015 letter, Ostler confirmed Conny wanted to stop litigating, and was not going to pay the litigation bills any longer.

Conny's new attorney, David Van Riper, substituted into the quiet title action on January 20, 2016. By February 9, 2016, Van Riper had requested and received a date for a voluntary settlement conference, filed a settlement conference statement, and negotiated a settlement. In the settlement agreement, Conny agreed to reduce her claimed ownership interest in the property from one-third to 20 percent. The quiet title action was dismissed on October 25, 2017.

Ostler assigned his claims for unpaid legal fees against Conny to CFFC2, Inc. (CFFC2).[3] In September 2019, CFFC2 sued Conny, individually and as trustee of the Bergstom Family Trust, for breach of contract and common counts. CFFC2 sought in damages $144,826.02 in attorney fees incurred and/or the reasonable value of Ostler's legal work.[4] Conny's answer included a general denial and several affirmative defenses. A bench trial was held in April 2021. Evidence establishing the facts outlined above was presented at the trial. At trial, Ostler testified Conny wanted to carry out Karl's wishes by pursuing the quiet title action. But Ostler admitted (1) Conny did not want to spend money to place Pierre in a better position in his dissolution proceeding, (2) the quiet title action was not pursued solely to benefit Conny's interest, but rather was designed to

---

[3]   Ostler is the president and sole shareholder of CFFC2.

[4]   Ostler testified the reasonable value of the services was higher than the unpaid amount reflected on the billing statements because he had discounted his fees for the work performed for Conny.

5

advance Pierre's dissolution case, and (3) "[Conny] did not have to file the [quiet title] lawsuit in order to [p]reserve her interest in the property."

Ostler's letters to Conny, admitted at trial, confirm these admissions. In an October 29, 2014 letter from Ostler to Conny, Ostler acknowledged Conny wanted to dismiss the complaint. Ostler also conceded the purpose of the quiet title action was primarily to put Pierre in a better position in the dissolution case. In a March 8, 2015 letter, Ostler acknowledged Conny had stated she no longer wished to help Pierre out in his dissolution matter. Again, Ostler admitted the quiet title action was "not drafted or pursued in a manner that was intended to place the protection of your title as the main concern." Ostler wrote "it could be argued by Debbie that if even if Karl did not trick anyone, that Pierre mislead Debbie into giving up her title, based on what Pierre evidently believed about Karl's intentions with regard to the title that he held. This is a key fact in the case, which the present complaint is designed to work around, for the benefit of Pierre's position."

At trial, Ostler admitted he did legal work for Pierre and billed Conny for it. Conny testified she did not know Ostler was performing legal work for Pierre or that she was paying for it.

Conny's expert opined (1) Ostler was attempting to recover attorney fees from Conny for legal services that were not reasonable for her in an individual capacity, (2) the legal services provided to Conny in her capacity as trustee of the Bergstom Family Trust were not reasonably incurred because there was no reason for the quiet title action to have been initiated, and (3) because there was no fee agreement between Ostler and Conny as trustee, Ostler was only entitled to recover a reasonable fee for his work, which the expert said was the amount already paid to Ostler by Conny.

The trial court issued a statement of decision to which CFFC2 filed objections. The trial court issued its final statement of decision and entered judgment in favor of Conny and against CFFC2 on all causes of action on May 12, 2021. CFFC2

6

filed a motion for a new trial, which the trial court denied. CFFC2 filed a timely notice of appeal.

## DISCUSSION

### I.

### SUFFICIENCY OF THE EVIDENCE

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; see *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.)

Under the substantial evidence standard, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence supporting the trial court's decision. [Citation.] Substantial evidence is evidence that is '"reasonable, credible, and of solid value."' [Citations.] We must presume in support of the judgment '"the existence of every fact the trier could reasonably deduce from the evidence."' [Citations.] Our task '*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted,' which will support the decision. [Citation.]" (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 811-812.) We resolve all conflicts in the evidence in favor of the judgment, we do not reweigh the evidence, and we are bound by the trial court's credibility determinations. (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 117.) The testimony of a single witness may constitute substantial evidence. (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 823.)

7

A.  Breach of Contract

As to the cause of action for breach of contract, the trial court found CFFC2 failed to prove its case.[5]

A fee agreement between an attorney and client may be declared unenforceable as a result of the attorney's violation of the Rules of Professional Conduct. (*Sheppard, Mullin, Richter & Hampton LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 73 (*Sheppard*).)

The court's finding the pursuit of the quiet title action benefitted Ostler and Pierre, and did not benefit Conny or the Bergstrom Family Trust, was amply supported by the evidence cited *ante*.[6]  Substantial evidence also supports the court's finding Ostler charged Conny and the Bergstrom Family Trust almost $150,000 for legal work performed primarily or completely for Pierre and Ostler's benefit.  Therefore, the court's finding the fee agreement was unenforceable must be affirmed.

When a fee agreement is unenforceable due to the attorney's ethical breach, the attorney may still be entitled to quantum meruit compensation.  (*Sheppard, supra,* 6 Cal.5th at p. 88.)  Addressing whether a lawyer may recover any compensation after violating an ethical duty, the California Supreme Court quoted the Restatement (Third) of Law Governing Lawyers:  "'A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter.' [Citation.]  An actual conflict of interest, the Court of Appeal reasoned, is always a

---

[5]    While the trial court noted Ostler's wrongful conduct excused Conny's performance under the contract, it found initially CFFC2 had not proven the elements of its claim. CFFC2's argument the trial court erred by permitting Conny to prevail based on unpled affirmative defenses cannot prevail as to this cause of action.  In essence, the trial court found CFFC2 failed to establish damages, a necessary element of this claim.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

[6]    No contract exists between Ostler and the Bergstom Family Trust or Conny as trustee.

8

serious violation, and so always bars any compensation. But while every violation of attorney conflict of interest rules is indeed serious to some degree, the rule described in the Restatement—which in turn derives from general principles of agency law—is not so categorical. The Restatement instructs, and we agree, that the egregiousness of the attorney's conduct, its potential and actual effect on the client and the attorney-client relationship, and the existence of alternative remedies are all also relevant to whether and to what extent forfeiture of compensation is warranted. [Citation.]" (*Sheppard, supra,* 6 Cal.5th at p. 89.)

In this case, the trial court found Ostler's conduct was so serious as to compel forfeiture of the unpaid attorney fees and costs billed to and owing by Conny. "The Court has carefully considered the totality of the facts here. It concludes the conduct by Ostler/the Firm was a clear and serious violation of duty to their client. The conduct was egregious and infected the entire attorney-client relationship and the services provided by the Firm. The conduct by Ostler/the Firm constituted acts of impropriety, was inconsistent with the character of the profession, and was incompatible with the faithful discharge of their duties and obligations to their client, Conny. Their conduct was prejudicial and harmful to Conny." The trial court's finding as to the seriousness of Ostler's ethical breach was supported by substantial evidence. The fees incurred did not benefit Conny or the Bergstrom Family Trust and were incurred despite Conny's repeated requests the quiet title action not be filed or pursued. Therefore, the court-ordered consequence of forfeiture of those fees must be affirmed.

B. Common Counts

CFFC2 also sought recovery from Conny based on common counts. "A common count alleges in substance that the defendant became indebted to the plaintiff in a certain stated sum, for some consideration such as 'money had and received by the defendant for the use of the plaintiff,' or 'for goods, wares and merchandise sold and

9

delivered by plaintiff to defendant,' or 'for work and labor performed by plaintiff'; and that no part of the sum has been paid. . . . [¶] Although other matters are often included, the cases make it clear that the only essential allegations are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment. [Citation.]" (4 Witkin, Cal. Procedure (6th ed. 2022) Pleading § 565, p. 654.)[7]

As with the claim for breach of contract, the trial court found, as to each of the four common counts alleged, CFFC2 failed to prove its claim. As noted *ante*, the trial court found Ostler's breaches of ethical duties were so serious CFFC2 could not recover the value of Ostler's legal services. (*Sheppard, supra,* 6 Cal.5th at p. 89.) These findings are supported by substantial evidence, and we therefore affirm the judgment.

C. Unpled Affirmative Defenses

CFFC2 argues the trial court improperly based its judgment on affirmative defenses not pled in Conny's answer to CFFC2's complaint. As to each cause of action, the trial court found CFFC2 had failed to prove the elements of its claim. Although the trial court addressed Conny's defenses in the statement of decision, it did not need to. We agree with the trial court CFFC2 failed to prove its case-in-chief as to any cause of action. Therefore, any error by the trial court in relying on affirmative defenses not pled in the answer was harmless.

In any event, the facts underlying the allegedly unidentified affirmative defenses were put at issue, either by Conny's general denial or by the affirmative defenses actually asserted. In answering a plaintiff's complaint, a defendant may generally deny the complaint, which places all facts at issue (Code Civ. Proc., § 431.30,

---

[7] CFFC2 alleged common counts for an open book account, an account stated, and for work/labor/services/materials rendered.

subd. (d)), and may assert affirmative defenses raising new matters not raised by the complaint itself. (*Id.*, § 431.30, subd. (b).) The defendant will generally bear the burden of proving any affirmative defense. (*KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1033.)

CFFC2 argues the trial court relied on the affirmative defenses of fraud and breach of fiduciary duty, which were not specifically pled in the answer, and unclean hands, which was. The unclean hands defense included some inapplicable language but read in relevant part: "[Ostler] has acted inequitably and/or in bad faith in the very matter in which [CFFC2] seeks relief." This language is sufficient to raise any new matters encompassed by the defenses of unclean hands and breach of fiduciary duty, and possibly even fraud as well. CFFC2 does not argue the evidence was insufficient to support these affirmative defenses.

Even if the affirmative defenses had not been raised in Conny's answer, a pleading may be amended at trial to conform to proof. (Code Civ. Proc., §§ 473, subd. (a)(1), 576.) We review the trial court's decision to permit or deny amendment of an answer for abuse of discretion. (*Environmental Health Advocates, Inc. v. Sream, Inc.* (2022) 83 Cal.App.5th 721, 738.) Assuming the trial court had been asked to and did permit amendment of Conny's answer to add the defenses of fraud and breach of fiduciary duty, CFFC2 would not have been prejudiced by the amendment. If the issues were fully tried, as they were here, it is difficult for the opposing party to claim prejudice, and it may be an abuse of discretion to deny amendment. (*County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1617-1618.)

## II.

### THE TRIAL COURT DID NOT ERR WITH REGARD TO CONNY'S EXPERT WITNESS

CFFC2 argues the trial court made two errors with regard to Conny's expert witness. First, Conny's expert witness designation was served three days late, and the

court granted an application for leave to make a late designation.  Second, the court denied CFFC2's motion in limine to exclude or limit Conny's expert witness's testimony.  As explained *post*, the trial court did not prejudicially err.

A.  The Trial Court Did Not Err by Permitting an Untimely Exchange of Expert Information

CFFC2 served a demand for simultaneous exchange of expert information to occur on January 25, 2021; CFFC2 served its expert information on that date.  Conny's counsel served expert information on January 28, 2021, based on counsel's mistaken belief the due date was February 1, 2021.  When Conny's counsel realized the mistake, counsel filed an ex parte application for leave to make a late expert designation, which CFFC2 opposed.  CFFC2's opposition did not contend it suffered any prejudice as a result of the late designation by Conny.

The trial court granted Conny's ex parte application for late designation of expert witnesses.  "The Court has considered all the relevant factors and concludes that Plaintiff, who opposes the motion, will not be prejudiced in maintaining its action on the merits by allowing the late-designated expert.  There is no reason to believe Plaintiff relied to its detriment on the absence of a timely designation.  Moreover, although Plaintiff argues Defendant's three-day delay in designating Gary Shoffner as an expert was 'willful,' the Court does not so find.  On the record before the Court, the Court finds the late designation was the product of a mistake or inadvertence and that Defendant, when the mistake became apparent, moved with reasonable promptness to address it."  The court continued the trial for one week to "eliminate even an arguable possibility of prejudice," and ordered Conny's expert be deposed by a date certain.

Code of Civil Procedure section 2034.720 provides a trial court *shall* grant leave to submit late or untimely expert witness information "only if all of the following conditions are satisfied:

12

"(a) The court has taken into account the extent to which the opposing party has relied on the absence of a list of expert witnesses.

"(b) The court has determined that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits.

"(c) The court has determined that the moving party did all of the following:  [¶] (1) Failed to submit the information as the result of mistake, inadvertence, surprise, or excusable neglect.  [¶] (2) Sought leave to submit the information promptly after learning of the mistake, inadvertence, surprise, or excusable neglect.  [¶] (3) Promptly thereafter served a copy of the proposed expert witness information . . . on all other parties who have appeared in the action.

"(d) The order is conditioned on the moving party making the expert available immediately for a deposition . . . and on any other terms as may be just, including, but not limited to, . . . a continuance of the trial for a reasonable period of time . . . ."

We review the trial court's order for abuse of discretion.  (*Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 418.)  Here, CFFC2 did not reasonably rely on the lack of an expert designation, as it received Conny's declaration just a few days late.  CFFC2 did not contend it suffered any prejudice as a result of the late designation. Conny's delay in requesting leave from the court was due to the fact her counsel believed the original exchange had been timely.  The trial court's order was conditioned on Conny making her expert available for deposition by a date certain, and the court continued the trial date to ensure CFFC2 would not be prejudiced.  The trial court did not err by granting leave to Conny to make a late expert disclosure.  (See *Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1447 [record did not show gamesmanship or effort to thwart legitimate discovery; exclusion of expert testimony was unwarranted when party's failure to make timely disclosure was not unreasonable].)

13

In any event, any error was harmless, because the trial court did not rely on the expert witness's testimony in reaching its decision. In the trial court's statement of decision, the trial court noted: "The evidence fully supports this conclusion [that Conny owes nothing further to the firm, individually or as trustee] even without considering the testimony of [Conny's] expert, Gary Shoff[n]er."

B. The Trial Court Did Not Err by Denying the Motion in Limine Seeking to Exclude or Limit the Expert's Testimony

CFFC2 argues the trial court erred by denying its motion in limine seeking to exclude or limit Conny's expert witness's testimony. We review this order for abuse of discretion. (*Reynaud v. Technicolor Creative Servs. v. United States* (2020) 46 Cal.App.5th 1007, 1021.)

During discovery, CFFC2 asked Conny to provide all facts supporting her claimed billing disputes. After the expert witness was designated, CFFC2 served a request for supplemental discovery responses; Conny responded all previous responses were complete and accurate.

CFFC2 moved for a motion in limine to exclude or limit the testimony of Conny's expert witness because "none of the facts, theories or assertions were disclosed in discovery responses served well after the witness was designated, and his testimony is inconsistent with the discovery responses, and his testimony is contrary to law." Conny filed opposition. The trial court denied the motion in limine.

We note initially CFFC2's arguments in the motion in limine that the expert's opinion was "flawed" or "unsupported" go to the opinion's relevance, not its admissibility.

The expert's opinions are not new facts, but opinions and analyses of the significance of those facts. The expert, when deposed, provided his theories about how much CFFC2 was owed based on the reasonable value of Ostler's services rather than the

14

strict calculation of hours claimed and hourly rates. This does not mean there were new discoverable facts Conny should have provided to CFFC2.

*Sigerseth v. Superior Court* (1972) 23 Cal.App.3d 427, the only case on which CFFC2 relies, is wholly inapposite. In its opening appellate brief, CFFC2 contends the *Sigerseth* case holds: "As an expert who has been retained by a party and designated as a trial witness, Mr. Shoffner may be treated as the agent of that party, so that, in answering interrogatories, Defendant is required to furnish facts known to the expert." *Sigerseth* actually holds "'information and opinions of the expert *relevant to his status as a witness* may be discovered through interrogation and deposition procedures.' [Citation.]" (*Id.* at p. 433.) The discovery at issue in *Sigerseth* involved the expert witness's qualifications, not the evidence underlying the expert's opinions. The *Sigerseth* case was decided before the addition of the statutes addressing expert discovery; the issue presented by *Sigerseth* would be highly unlikely to arise today.

Moreover, as noted *ante*, the trial court reached its decision without considering the expert witness's testimony. Therefore, any error would be harmless.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.



MOTOIKE, J.

WE CONCUR:



SANCHEZ, ACTING P. J.



DELANEY, J.

15